BENJAMIN B. WAGNER
United States Attorney
EDWARD A. OLSEN, CSBN 214150
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2821
Facsimile:  (916) 554-2900
Email: edward.olsen@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON, VERNON NEWMAN, JEFF LOUGHRAN and WILLIAM EDWARDS<br><br>Plaintiffs,<br><br>v.<br><br>ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation,<br><br>Defendants. | CASE NO.  2:10-CV-02911-JAM-EFB<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF** |

## I. INTRODUCTION

Defendants Eric Holder and Robert Mueller hereby submit their supplemental brief addressing the applicability to this case of two recent opinions – *Nordyke v. King*, No. 07-15763, 2011 WL 1632063 (9th Cir. May 2, 2011) and *United States v. Booker*, Nos. 09-1810, 09-2302, 2011 WL 1631947 (1st Cir. May 2, 2011).

## II. DISCUSSION

### A. *Nordyke v. King*, No. 07-15763, 2011 WL 1632063 (9th Cir. May 2, 2011)

In *Nordyke v. King*, No. 07-15763, 2011 WL 1632063 (9th Cir. May 2, 2011), the Ninth Circuit addressed whether the Second Amendment prohibited a local government from banning gun shows on its property. In that context, the court concluded that only regulations which substantially burden the right to keep and bear arms should receive heightened scrutiny. *Id.* at *6. The court declined to decide precisely what type of heightened scrutiny applies to laws that substantially burden the right to keep and bear arms because the court concluded that the County of Alameda's ordinance making it a misdemeanor to bring onto or to possess a firearm or ammunition on county property did not substantially burden the plaintiffs' rights to keep and bear arms. *Id.* at *6 n.9 ("We do not decide today precisely what type of heightened scrutiny applies to laws that substantially burden Second Amendment rights."). The court found that the ordinance did not substantially burden the plaintiffs' Second Amendment rights because the ordinance did not make it materially more difficult to obtain firearms and did not prohibit gun shows; it "merely declines to host them on government premises." *Id.* at * 8-9.

The *Nordyke* court also stated that "applying strict scrutiny to every gun-control regulation would be inconsistent with *Heller*'s reasoning." *Id.* at * 4; *see also id.* at *5 ("We are satisfied that a substantial burden framework will prove to be far more judicially manageable than an approach that would reflexively apply strict scrutiny to all gun-control laws."). The court reasoned that "[u]nder the strict scrutiny approach, a court would have to determine whether each challenged gun-control regulation is narrowly tailored to a compelling governmental interest (presumably, the interest in reducing gun crime)" and that "*Heller* specifically renounced an approach that would base the constitutionality of gun-control regulations on judicial estimations of the extent to which each

regulation is likely to reduce such crime." *Id.* at *4.

*Nordyke* has very limited application to the present case. *Nordyke* does not address what level of scrutiny should be applied to gun statutes directed at felons and misdemeanants – persons who manifestly are not "law-abiding, responsible citizens." *See Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008) ("[The Second Amendment] surely elevates above all other interests the right of *law-abiding, responsible* citizens to use arms in defense of hearth and home.") (emphasis added); *United States v. Booker*, Nos. 09-1810, 09-2302, 2011 WL 1631947, at *11 n.17 (1st Cir. May 2, 2011) (questioning whether persons convicted of misdemeanor crimes of domestic violence, "who manifestly are not 'law-abiding, responsible citizens,'" fall within the zone of interest protected by the "core" Second Amendment right). *Nordyke* does not hold that the "presumptively lawful regulations" discussed in *Heller* must be subjected to heightened scrutiny. In fact, the only mention of *Heller*'s "presumptively lawful regulations" occurs in a footnote, in which the majority rejects what it perceives to be the dissenting judge's view that such regulations (or at least those presumptively lawful regulations that impose conditions and qualifications on the commercial sale of arms) should be subjected only to rational basis scrutiny. *Id.* at *10 n.14. The majority states: "[W]e read 'presumptively lawful regulations' to mean 'regulations which we presume will survive constitutional scrutiny,' and to say nothing about what standard of review should be applied to them." *Nordyke*, 2011 WL 1632063, at *10 n.14.

Importantly, the *Nordyke* court did not call into question the validity of *United States v. Vongxay*, 594 F.3d 1111 (9th Cir.), *cert. denied*, 131 S. Ct. 294 (Oct. 4, 2010), in which the Ninth Circuit held that "felons are categorically different from the individuals who have a fundamental right to bear arms, and Vongxay's reliance on *Heller* is misplaced." *Vongxay*, 594 F.3d at 1114-15 (footnote omitted). The *Vongxay* court concluded that a law which prohibits felons from possessing firearms falls within *Heller*'s list of presumptively lawful regulatory measures and does require any further constitutional scrutiny. *See id*.

Admittedly, *Nordyke* does cast doubt on the utility of an approach (advocated by the government in this case) "that would base the constitutionality of a gun-control regulation on judicial estimations of the extent to which each regulation is likely to reduce such crime." *Id.* at *4; *see also id.*

at \*5 ("Sorting gun-control regulations based on their likely effectiveness is a task better fit for the legislature."); *id.* at \*5 ("Indeed, whether a gun-control regulation serves the government's interest in safety is likely to be a difficult question to answer."). In the case of 18 U.S.C. § 922(g)(9), however, this Court would not be writing on a clean slate in analyzing whether § 922(g)(9) serves the government's important interest in preventing gun-related violence. Both the First and Seventh Circuits have already concluded that there is a substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the government's important interest in preventing gun violence in the home. In *Booker*, for example, the First Circuit concluded as follows:

> Nor can there be any question that there is a substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home. Statistics bear out the Supreme Court's observation that "[f]irearms and domestic strife are a potentially deadly combination nationwide." *Hayes*, 129 S. Ct. at 1087. According to figures collected by the Justice Department and included in the record here, nearly 52,000 individuals were murdered by a domestic intimate between 1976 and 1996, and the perpetrator used a firearm in roughly 65% of the murders (33,500). The risk of fatality from an assault involving a firearm is far greater than that associated with other weapons. *See Skoien*, 614 F.3d at 642-43 (discussing studies finding that an assault with a gun is five times more deadly than an assault with a knife, and that domestic assaults with guns are twelve times as likely to result in fatality than assaults with knives or fists).
>
> Not surprisingly, research has found that "[t]he presence of a gun in the home of a convicted domestic abuser is 'strongly and independently associated with an increased risk of homicide.'" *Id.* at 643-44 (quoting Arthur L. Kellerman, *et al.*, Gun Ownership as a Risk Factor for Homicide in the Home, 329 New Eng. J. Med. 1084, 1087 (1993)). It follows that removing guns from the home will materially alleviate the danger of intimate homicide by convicted abusers. And, as the Seventh Circuit has noted, the fact that the recidivism rate for domestic violence is high suggests that there are "substantial benefits in keeping the most deadly weapons out of the hands of domestic abusers." *Id.* at 644 (surveying studies estimating overall domestic violence recidivism rate to be between 35% and 80%).

*Booker*, 2011 WL 1631947, at \*11-12 (footnote omitted); *see also United States v. Skoien*, 614 F.3d 638, 641-45 (7th Cir. 2010) (en banc) (same), *cert. denied*, 131 S. Ct. 1674 (Mar. 21, 2011).

**B.    *United States v. Booker*, Nos. 09-1810, 09-2302, 2011 WL 1631947 (1st Cir. May 2, 2011)**

In *United States v. Booker*, Nos. 09-1810, 09-2302, 2011 WL 1631947 (1st Cir. May 2, 2011), the First Circuit rejected a criminal defendant's Second Amendment challenge to 18 U.S.C. § 922(g)(9). The court first concluded that "§ 922(g)(9) fits comfortably among the categories of

regulations that *Heller* suggested would be 'presumptively lawful.'"[1] *Booker*, 2011 WL 163197, at *10. The court explained that § 922(g)(9) is, historically and practically, a corollary outgrowth of the federal felon disqualification statute. *Id.*; *see also United States v. Hayes*, 555 U.S. 415, 129 S. Ct. 1079, 1082 (2009) (stating that the Lautenberg Amendment "extended" the existing felon disqualification to individuals convicted of a misdemeanor crime of domestic violence). The court stated that "in covering only those with a record of violent crime, § 922(g)(9) is arguably more consistent with the historical regulation of firearms than § 922(g)(1), which extends to violent and nonviolent offenders alike." *Booker*, 2011 WL 1631947, at *10.

The *Booker* court then concluded that "[w]hile the categorical regulation of gun possession by domestic violence misdemeanants thus appears consistent with *Heller*'s reference to certain presumptively lawful regulatory measures, we agree with the Seventh Circuit's conclusion in *Skoien* that some sort of showing must be made to support the adoption of a new categorical limit on the Second Amendment right." *Booker*, 2011 WL 1631947, at *11. The court noted that the parties had proposed competing standards of judicial scrutiny (the defendant argued that strict scrutiny was required because § 922(g)(9) infringes on the "core" constitutional right recognized in *Heller* to "possess firearms in the home," whereas the government urged the court to adopt immediate scrutiny), but stated that "[w]e think it sufficient to conclude, as did the Seventh Circuit, that a categorical ban on gun ownership by a class of individuals must be supported by some form of 'strong showing,'

---

[1] In *Heller*, the Supreme Court held there were limits to the Second Amendment right:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes. . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626-27. In an accompanying footnote, the Court clarified this passage as follows: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 627 n.26.

necessitating a substantial relationship between the restriction and an important governmental objective." *Booker*, 2011 WL 1631947, at *11 (citing *Skoien*, 614 F.3d at 641.[2]

Applying the "strong showing" test, the *Booker* court concluded that § 922(g)(9) substantially promotes an important government interest in preventing gun violence. The court noted that "[s]ection 922(g)(9) finds its animating interest in keeping guns away from people who have been proven to engage in violence with whom they share a domestically intimate or familial relationship, or who live with them or the like." *Booker*, 2011 WL 1631947, at * 11. The court then concluded that there was no question "that there is a substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home." *Id.*

In the present case, the government's position is that § 922(g)(9) fits comfortably among the categories of regulations that *Heller* stated are "presumptively lawful" and that no further constitutional scrutiny is required to uphold the statute against the plaintiffs' Second Amendment challenge. *See, e.g.*, *Vongxay*, 594 F.3d at 1114-15 (determining that § 922(g)(1) falls within *Heller*'s list of presumptively lawful regulatory measures and does not require any further constitutional scrutiny). However, assuming for purposes of argument that the Court concludes that some level of scrutiny must be applied, the government urges the Court to apply intermediate scrutiny to § 922(g)(9) and follow an analysis similar to that used in *Booker*. As determined by the First Circuit in *Booker*, § 922(g)(9) substantially promotes an important government interest in preventing gun violence.

Dated:   May 18, 2011                                   BENJAMIN B. WAGNER
                                                        UNITED STATES ATTORNEY

                                                        */s/ Edward A. Olsen*
                                                        EDWARD A. OLSEN
                                                        Assistant United States Attorney

---

[2] In a footnote, the First Circuit noted that in *Heller*, the Court held that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Booker*, 2011 WL 1631947, at *11 n.17 (quoting *Heller*, 554 U.S. at 635). The First Circuit questioned whether the defendants, "who manifestly are not 'law-abiding, responsible citizens,' fell within this zone of interest." *Id.*.

DEFENDANTS' SUPPLEMENTAL BRIEF         -5-