1   BENJAMIN B. WAGNER
    United States Attorney
2   EDWARD A. OLSEN, CSBN 214150
    Assistant United States Attorney
3   501 I Street, Suite 10-100
    Sacramento, California  95814
4   Telephone: (916) 554-2821
    Facsimile:  (916) 554-2900
5   Email: edward.olsen@usdoj.gov

6   Attorneys for Federal Defendants

7

8                  IN THE UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  RICHARD ENOS, JEFF BASTASINI,            CASE NO.  2:10-CV-02911-JAM-EFB
    LOUIE MERCADO, WALTER GROVES,
12  MANUEL MONTEIRO, EDWARD
    ERIKSON, VERNON NEWMAN,                  **MEMORANDUM OF POINTS AND**
13                                           **AUTHORITIES IN SUPPORT OF**
                       Plaintiffs,           **DEFENDANTS' MOTION TO DISMISS**
14
    v.                                       Date:     November 16, 2011
15                                           Time:     9:30 a.m.
    ERIC HOLDER, as United States Attorney   Place:    Courtroom 6, 14th Floor
16  General, and ROBERT MUELLER, III, as     Judge:    John A. Mendez
    Director of the Federal Bureau of Investigation,
17
                       Defendants.
18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

     A.   The Second Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   The National Instant Criminal Background Check System. . . . . . . . . . . . . . . . . 8
     C.   18 U.S.C. § 925A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.  LEGAL STANDARDS ON THE MOTION TO DISMISS. . . . . . . . . . . . . . . . . . . . . 9

     A.   Federal Rule of Civil Procedure 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     B.   Federal Rule of Civil Procedure 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.   DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.   Plaintiffs' Claims For Declaratory Relief
          Under 18 U.S.C. § 925A Lack Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          1.   The Only Proper Defendant Under
              18 U.S.C. § 925A Is The United States. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          2.   Plaintiffs Have Not Had Their "Civil Rights
              Restored" Within The Meaning of 18 U.S.C. § 921(a)(33)(B)(ii). . . . . . . . . . 11

              a.   California Penal Code § 12021(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . 11

              b.   California Penal Code § 12021(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . 15

          3.   Plaintiffs' Claim That They Did Not
              Knowingly and Intelligently Waive Their
              Right To A Jury Trial Lacks Merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     B.   Plaintiffs' Second Amendment Challenge to
          18 U.S.C. § 922(g)(9) Is Meritless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          1.   *District of Columbia v. Heller*, 554 U.S. 570 (2008). . . . . . . . . . . . . . . . . 16

          2.   Second Amendment Challenges to 18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . 18

          3.   18 U.S.C. § 922(g)(9) Falls Within *Heller*'s List of
              Presumptively Lawful Prohibitions On The Right To Bear Arms. . . . . . . . . . 19

          4.   18 U.S.C. § 922(g)(9) Withstands Intermediate Scrutiny . . . . . . . . . . . . . . 21

          5.   Plaintiffs' "Lifetime Ban" Argument Fails. . . . . . . . . . . . . . . . . . . . . . . . . 23

     C.   Plaintiffs Lack Standing To Challenge The Constitutionality
          of 18 U.S.C. § 922(d)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VI.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

**TABLE OF AUTHORITIES**

2

<u>FEDERAL CASES</u>

3

4

*Ashcroft v. Iqbal*,
   ___ U.S. ___, 129 S. Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6

7

*Carey v. Brown*,
   447 U.S. 455, 100 S. Ct. 2286, 65 L. Ed. 2d 263 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

8

*Casey v. Lewis*,
   4 F.3d 1516 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

9

10

*Clark v. Jeter*,
   486 U.S. 456 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

11

*District of Columbia v. Heller*,
   554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 17, 19

12

13

*Eibler v. Dep't of Treasury*,
   311 F. Supp. 2d 618 (N.D. Ohio 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14

*Florida Bar v. Went For It, Inc.*,
   515 U.S. 618 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15

16

*Jennings v. Mukasey*,
   511 F.3d 894 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24

17

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18

19

*Logan v. United States*,
   552 U.S. 23, 128 S. Ct. 475, 169 L. Ed. 2d 432 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23

20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

21

22

*McGrath v. United States*,
   60 F.3d 1005 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

23

*Nat'l Ass'n of Gov't Emps., Inc. v. Barrett*,
   968 F. Supp. 1564 (N.D. Ga. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

24

25

*Nixon v. Shrink Missouri Government PAC*,
   528 U.S. 377 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

26

*North Star Int'l v. Arizona Corp. Comm'n*,
   720 F.2d 578 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27

28

*Rattlesnake Coalition v. United States Envtl. Protection Agency*,
   509 F.3d 1095 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii

*Richardson v. FBI,*
    124 F. Supp. 2d 429 (W.D. La. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ross v. Fed. Bureau of Alcohol, Tobacco, and Firearms,*
    ___ F. Supp. 2d ___, 2011 WL 3439412 (Aug. 4, 2011 D. Md. 2011). . . . . . . . . . . . . . . . . . 21

*San Diego County Gun Rights,*
    98  F.3d at 1126. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*San Diego County Gun Rights Comm. v. Reno,*
    98 F.3d 1121 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re United States,*
    578 F.3d 1195 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Andaverde,*
    64 F.3d 1305 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Anderson,*
    559 F.3d 348 (5th Cir. 2009), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Barton,*
    633 F.3d 168 (3d Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*United States v. Booker,*
    570 F. Supp. 2d 161 (D. Me. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Booker,*
    644 F.3d 12 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*United States v. Brailey,*
    408 F.3d 609 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 15

*United States v. Brown,*
    715 F. Supp. 2d 688 (E.D. Va. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Cassidy,*
    899 F.2d  543 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Chester,*
    628 F.3d 673 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*United States v. Dahms,*
    938 F.2d 131 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Essig,*
    10 F.3d 968 (3d Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Gomez,*
    911 F.2d 219 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Hayes,*
    555 U.S. 415, 129 S. Ct. 1079 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

*United States v. Joos*,
638 F.3d 581 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Khami*,
2010 WL 273134 (6th Cir. Jan. 26, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Keeney*,
241 F.3d 1040 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Leuschen*,
395 F.3d 155 (3d Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. McCane*,
573 F.3d 1037 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Meeks*,
987 F.2d 575 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 15

 *United States v. Rozier*,
598 F.3d 768 (11th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Salerno*,
481 U.S. 739 (1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Skoien*,
614 F.3d 638 (7th Cir. 2010) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22, 23

*United States v. Smith*,
742 F. Supp. 2d 855 (S.D.W. Va. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

*United States v. Thomas*,
991 F.2d 206 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Tooley*,
717 F. Supp. 2d 580 (S.D.W. Va. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Torres-Rosario*,
___ F.3d ___, 2011 WL 4424823 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Valerio*,
441 F.3d 837 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*United States v. Vongxay*,
594 F.3d 1111 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*United States v. Walker*,
709 F. Supp. 2d 460 (E.D. Va. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. White*,
593 F.3d 1199 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*United States v. Williams*,
616 F.3d 685 (7th Cir.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATE CASES

*People v. Arnold*,
   Cal. 4th 294, 92 P.3d 335, 14 Cal. Rptr. 3d 840 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Bernal*,
   27 Cal. Rptr. 2d 839 (Cal. Ct. App. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Crosby*,
   5 Cal. Rptr. 2d 159 (Cal .Ct. App. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Flores*,
   86 Cal. Rptr. 3d 804 (Cal. Ct. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*People v. Gurule*,
   28 Cal. 4th 557, 51 P.3d 224, 123 Cal. Rptr. 2d 345 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Haendiges*,
   191 Cal. Rptr. 785 (Cal. Ct. App. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Murray*,
   29 Cal. Rptr. 2d 42 (Cal. Ct. App. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## FEDERAL STATUTES

28 C.F.R. §§ 25.6, 25.7(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 C.F.R. § 25.6(c)(iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 921(a)(20)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

18 U.S.C. § 921(a)(33). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 7

18 U.S.C. § 921(a)(33)(A)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 921(a)(33)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 921(a)(33)(B)(i)(II)(bb). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

18 U.S.C. § 921(a)(33)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 14, 15, 23, 24

18 U.S.C. § 922(d)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 24, 25

18 U.S.C. § 922(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17, 18, 19, 20

18 U.S.C. § 922(g)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 16, 18, 19, 20

18 U.S.C. § 922(s). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

18 U.S.C. § 922(t). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 922(t)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 922(t)(1)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 925A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 8, 9, 10, 11, 15

142 Cong. Rec. 22985 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

142 Cong. Rec. S8832. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 10

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 25

## <u>STATE STATUTES</u>

Cal. Penal Code § 1203.4a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cal. Penal Code § 12021(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# I.  INTRODUCTION

Plaintiffs Richard Enos, Jeff Bastasini, Louie Mercado, Walter Groves, Manuel Monteiro, Edward Erikson, and Vernon Newman were each convicted of a misdemeanor crime of domestic violence under California Penal Code § 273.5 (Willful Infliction of Corporal Injury to a Spouse/Cohabitant).  Plaintiffs wish to acquire firearms but, under 18 U.S.C. § 922(g)(9), it is unlawful for any person convicted of a misdemeanor crime of domestic violence to possess a firearm.  The definition of the term "misdemeanor crime of domestic violence," however, includes the following exception:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights, expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii) (emphasis added).

Plaintiffs do not contend that their convictions have been expunged or set aside, or that they have been pardoned within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  Instead, they seek a declaration, presumably under 18 U.S.C. § 925A, that they have had their "civil rights restored" within the meaning of that provision under two theories.  First, all of the plaintiffs argue that, although California Penal Code § 12021(c)(1) provides that a person who has been convicted under California Penal Code § 273.5 may not possess a firearm within 10 years of his or her conviction, more than 10 years have elapsed since the dates of their convictions.  Therefore, in plaintiffs' view, they have had their "civil rights restored" within the meaning of § 921(a)(33)(B)(ii).  Second, plaintiff Enos (but not the other plaintiffs) argues that, in addition to the fact that more than 10 years have elapsed since the date of his conviction, he received relief from the prohibition on firearms possession imposed by California Penal Code § 12021(c)(1) by a superior court judge under California Penal Code § 12021(c)(3).  Therefore, in Enos' view, he has had his "civil rights restored" within the meaning of § 921(a)(33)(B)(ii) for this additional reason.

Plaintiffs Enos, Bastasini, Mercado, Groves, and Monteiro (but not Erikson and Newman) also seek a declaration that they were not actually convicted of a misdemeanor crime of domestic violence because they did not knowingly and intelligently waive their right to a jury trial.  *See* 18 U.S.C. §

921(a)(33)(B)(i)(II)(bb) (providing that a person shall not be considered to have been convicted of a misdemeanor crime of domestic violence unless he or she knowingly and intelligently waived his or her right to have the case tried by a jury). These plaintiffs argue that, prior to waiving their right to a jury, they were not apprized of the possibility of losing their right to possess a firearm because, at the time of their pleas, "there was no federal or state law prohibiting Domestic Violence misdemeanants from acquiring/possessing firearms upon conviction." Second Amended Complaint ¶¶ 36a, 39b.

Finally, all of the plaintiffs allege that 18 U.S.C. § 922(g)(9), which makes it unlawful for any person convicted of a misdemeanor crime of domestic violence to possess a firearm, and 18 U.S.C. § 922(d)(9), which makes it unlawful for any person to sell or otherwise dispose of a firearm to a person who has been convicted of a misdemeanor crime of domestic violence, violate the Second Amendment, both facially and as applied.

The defendants respectfully ask this Court to dismiss this action under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1) for the following reasons: (1) the only proper defendant in a claim brought pursuant to 18 U.S.C. § 925A is the United States; (2) plaintiffs have not had their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii); (3) plaintiffs' assertion that they were not convicted of misdemeanor crimes of domestic violence because they did not knowingly and intelligently waive their right to a jury trial lacks merit; (4) plaintiffs fail to state a claim that 18 U.S.C. § 922(g)(9) violates the Second Amendment either facially or as applied; and (5) plaintiffs lack standing to challenge the constitutionality of 18 U.S.C. § 922(d)(9).

## II.  FACTUAL BACKGROUND

**A.    The Second Amended Complaint**

Plaintiff Richard Enos alleges that he was convicted of a misdemeanor violation of California Penal Code § 273.5(a) (Willful Infliction of Corporal Injury) on or about July 15, 1991.[1]  Second

---

[1]  California Penal Code § 273.5(a) provides:

Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall

1  Amended Complaint ¶ 28a.  On June 16, 2000, a superior court judge granted Enos' petition for relief

2  under California Penal Code § 12021(c) from the ten-year prohibition on possessing firearms that

3  California Penal Code § 12021(a) imposes on individuals convicted of misdemeanor crimes of

4  domestic violence.  Second Amended Complaint ¶ 28g.  In February 2001, Enos "caused a letter to be

5  sent to the California Department of Justice referencing the order by [the superior court judge]

6  restoring his rights."  Second Amended Complaint ¶ 28h.  He alleges that, in August of 2004, he was

7  "denied a firearm purchase and advised by the State of California that the denial was being maintained

8  by U.S. Department of Justice, Federal Bureau of Investigation, National Instant Criminal Background

9  Check System."  Second Amended Complaint ¶ 28i.  He contends that, although he is permitted to

10  possess a firearm under California law (due to the fact that he obtained relief from a superior court

11  judge from the ten-year prohibition on possessing firearms and because more than 10 years have

12  elapsed since the date of his conviction), he is prohibited from acquiring and possessing a firearm due

13  to the defendants' incorrect interpretation of 18 U.S.C. § 921(a)(33) (which defines the term

14  "misdemeanor crime of domestic violence" and includes an exception for individuals whose "civil

15  rights" have been "restored.").  According to Enos, the fact that he may possess a firearm without

16  running afoul of California Penal Code § 12021(a) means that he has had his "civil rights restored"

17  within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  Enos also contends that because he was not

18  apprized at the time of his *nolo contendere* plea that he would be prohibited from possessing a firearm,

19  his waiver of the right to a jury trial was not made knowingly or intelligently and, consequently, he has

20  not been convicted of a misdemeanor crime of domestic violence within the meaning of 18 U.S.C. §

21  921(a)(33).

22      Plaintiffs Jeff Bastasini alleges that he was convicted of two counts of misdemeanor violation

23  of California Penal Code § 273.5 (Wilful Infliction of Corporal Injury) and 242 on March 25, 1991.

24  Second Amended Complaint ¶ 29a.  At some point thereafter (presumably more than ten years after the

25  date of his conviction), Bastasini obtained a Firearm Permit from the California Bureau of Security and

26  _____

27      be punished by imprisonment in the state prison for two, three, or four years, or in a
    county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000)

28      or by both that fine and imprisonment.

1   Investigative Services.  Second Amended Complaint ¶ 29f.  He alleges that, on or about February 16,

2   2006, he was informed that his Firearm Permit was being revoked in light of his conviction on March

3   25, 1991, although he does not specify by whom he was so informed.  Second Amended Complaint ¶

4   29g.  He further alleges that, on July 11, 2011, he applied for a firearm purchase at a federally-licensed

5   firearms dealer and filled out the ATF Form 4473 (5300.9).  Second Amended Complaint ¶ 29h.  On

6   the form, he truthfully answered "YES" to Question 11.i.[2]  *Id.*  He adds that, on July 18, 2011, he was

7   denied a firearms purchase and, upon making an inquiry to the California Department of Justice, was

8   informed that the reason for the denial was that federal law prohibited his clearance to purchase the gun

9   and that he should direct his questions to federal authorities.  Second Amended Complaint ¶ 29i.  He

10  contends that, although he is permitted to possess a firearm under California law (due to the fact that

11  more than 10 years have elapsed since the date of his conviction), he is prohibited from acquiring and

12  possessing a firearm due to the defendants' incorrect interpretation of 18 U.S.C. § 921(a)(33) (which

13  defines the term "misdemeanor crime of domestic violence" and includes an exception for individuals

14  whose "civil rights" have been "restored").  According to Bastasini, the fact that he may possess a

15  firearm without running afoul of California Penal Code § 12021(a) means that he has had his "civil

16  rights restored" within the meaning of § 921(a)(33)(B)(ii).  Bastasini also contends that because he was

17  not apprized at the time of his *nolo contendere* plea that he would be prohibited from possessing a

18  firearm, his waiver of the right to a jury trial was not made knowingly or intelligently and,

19  consequently, he has not been convicted of a misdemeanor crime of domestic violence within the

20  meaning of 18 U.S.C. § 921(a)(33).

21      Plaintiff Louie Mercado alleges that he was convicted of a misdemeanor violation of California

22  Penal Code § 273.5 (Willful Infliction of Corporal Injury) on December 17, 1990.  Second Amended

23  _____

24      [2]  Question 11.i asks: Have you ever been convicted in any court of a misdemeanor crime of
    domestic violence?  However, the instruction for Question 11.i provides that a person who has been
25  convicted of a misdemeanor crime of domestic violence is not prohibited from purchasing, receiving, or
    possessing a firearm if, under the law of the jurisdiction where the conviction occurred, the person "has
26  had their civil rights (the right to vote, sit on a jury, and hold public office) taken away and later
    restored" and the person is not prohibited by the law of the jurisdiction where the conviction occurred
27  from receiving or possessing firearms."  The instruction provides that persons subject to this exception
    should answer "NO" to Question 11.i.  Docket No. 13.

28

1  Complaint ¶ 30a.  At some point after his conviction (presumably after ten years have elapsed since the

2  date of his conviction), Mercado obtained a Firearm Permit from the California Bureau of Security and

3  Investigative Services.  Second Amended Complaint ¶ 30f.  On or about May 1, 2006, Mercado was

4  informed that his Firearm Permit was being revoked in light of his conviction on December 17, 1990,

5  although he does not specify by whom he was so informed.  Second Amended Complaint ¶ 30g.  He

6  further alleges that, on July 12, 2011, he applied for a firearm purchase at a federally-licensed firearms

7  dealer and filled out the ATF Form 4473 (5300.9).  Second Amended Complaint ¶30h.  On the form, he

8  truthfully answered "YES" to Question 11.ii.  *Id.*  He adds that, on same day (July 12, 2011), he was

9  denied a firearm purchase.  Second Amended Complaint ¶ 30i.  Upon making an inquiry to the dealer,

10  Mercado was informed that answering "YES" to Question 11.i on ATF Form 4473 (5300.9) required

11  the dealer to stop the transaction and deny the purchase.  *Id.*  He contends that, although he is permitted

12  to possess a firearm under California law (due to the fact that more than 10 years have elapsed since the

13  date of his conviction), he is prohibited from acquiring and possessing a firearm due to the defendants'

14  incorrect interpretation of 18 U.S.C. § 921(a)(33) (which defines the term "misdemeanor crime of

15  domestic violence" and includes an exception for individuals whose "civil rights" have been

16  "restored").  According to Mercado, the fact that he may possess a firearm without running afoul of

17  California Penal Code § 12021(a) means that he has had his "civil rights restored" within the meaning

18  of 18 U.S.C. § 921(a)(33)(B)(ii).  Mercado also contends that because he was not apprized at the time

19  of his no contest plea that he would be prohibited from possessing a firearm, his waiver of the right to a

20  jury trial was not made knowingly or intelligently and, consequently, he has not been convicted of a

21  misdemeanor crime of domestic violence within the meaning of 18 U.S.C. § 921(a)(33).

22       Plaintiff Walter Groves alleges that he was convicted of a misdemeanor violation of California

23  Penal Code § 273.5 (Willful Infliction of Corporal Injury) on January 12, 1990.  Second Amended

24  Complaint ¶ 31a.  He alleges that, on September 26, 2005, he was denied a firearms purchase and

25  "informed that federal law prohibited California from clearing his firearms purchase."  Second

26  Amended Complaint ¶ 31f.  On or about July 18, 2011, Groves again attempted to purchase a firearm,

27  but the federally-licensed firearms dealer refused to complete the application process because Groves

28  truthfully answered "YES" to Question 11.i on ATF Form 4473 (5300.9).  Second Amended Complaint

1   ¶ 31g.  He contends that, although he is permitted to possess a firearm under California law (due to the

2   fact that more than 10 years have elapsed since the date of his conviction), he is prohibited from

3   acquiring and possessing a firearm due to the defendants' incorrect interpretation of 18 U.S.C. §

4   921(a)(33) (which defines the term "misdemeanor crime of domestic violence" and includes an

5   exception for individuals whose "civil rights" have been "restored").  According to Groves, the fact

6   that he may possess a firearm without running afoul of California Penal Code § 12021(a) means that he

7   has had his "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  Groves also

8   contends that because he was not apprized at the time of his no contest plea that he would be prohibited

9   from possessing a firearm, his waiver of the right to a jury trial was not made knowingly or

10  intelligently and, consequently, he has not been convicted of a misdemeanor crime of domestic

11  violence within the meaning of 18 U.S.C. § 921(a)(33).

12      Plaintiff Manuel Monteiro alleges that he was convicted of a misdemeanor violation of

13  California Penal Code § 273.5 (Willful Infliction of Corporal Injury) on May 27, 1992.  Second

14  Amended Complaint ¶ 32a.  He alleges that, on July 14, 2011, he was denied a firearm purchase and

15  was informed by the California Department of Justice that the denial "was based on the Federal Brady

16  Act."  Second Amended Complaint ¶ 32f.  He contends that, although he is permitted to possess a

17  firearm under California law (due to the fact that more than 10 years have elapsed since the date of his

18  conviction), he is prohibited from acquiring and possessing a firearm due to the defendants' incorrect

19  interpretation of 18 U.S.C. § 921(a)(33) (which defines the term "misdemeanor crime of domestic

20  violence" and includes an exception for individuals whose "civil rights" have been "restored").

21  According to Monteiro, the fact that he may possess a firearm without running afoul of California

22  Penal Code § 12021(a) means that he has had his "civil rights restored" within the meaning of 18

23  U.S.C. § 921(a)(33)(B)(ii).  Monteiro also contends that because he was not apprized at the time of his

24  no contest plea that he would be prohibited from possessing a firearm, his waiver of the right to a jury

25  trial was not made knowingly or intelligently and, consequently, he has not been convicted of a

26  misdemeanor crime of domestic violence within the meaning of 18 U.S.C. § 921(a)(33).

27      Plaintiff Edward Erikson alleges that he was convicted of a misdemeanor violation of California

28  Penal Code § 273.5 (Willful Infliction of Corporal Injury) on June 3, 1996.  Second Amended

1   Complaint ¶ 33a.  He alleges that, on or about July 19, 2011, he was denied a firearm purchase "when

2   the dealer refused to process his application for a transfer due to his truthful answer of 'YES' to

3   question 11.ii on the ATF Form 4473 (5300.9)."  Second Amended Complaint ¶33.c.  He contends that,

4   although he is permitted to possess a firearm under California law (due to the fact that more than 10

5   years have elapsed since the date of his conviction), he is prohibited from acquiring and possessing a

6   firearm due to the defendants' incorrect interpretation of 18 U.S.C. § 921(a)(33) (which defines the

7   term "misdemeanor crime of domestic violence" and includes an exception for individuals whose "civil

8   rights" have been "restored").  According to Erikson, the fact that he may possess a firearm without

9   running afoul of California Penal Code § 12021(a) means that he has had his "civil rights restored"

10  within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).

11      Plaintiff Vernon Newman alleges that he was convicted of a misdemeanor violation of

12  California Penal Code § 243(e) (Battery Against a Spouse/Cohabitant) on September 17, 1998.  Second

13  Amended Complaint ¶ 34a.  He alleges that, on or about August 1, 2011, he was denied a firearm

14  purchase by the California Department of Justice after truthfully answering "YES" to Question 11.i on

15  ATF Form 4473 (5300.9).  Second Amended Complaint ¶ 34c.  He contends that, although he is

16  permitted to possess a firearm under California law (due to the fact that more than 10 years have

17  elapsed since the date of his conviction), he is prohibited from acquiring and possessing a firearm due

18  to the defendants' incorrect interpretation of 18 U.S.C. § 921(a)(33) (which defines the term

19  "misdemeanor crime of domestic violence" and includes an exception for individuals whose "civil

20  rights" have been "restored").  According to Newman, the fact that he may possess a firearm without

21  running afoul of California Penal Code § 12021(a) means that he has had his "civil rights restored"

22  within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).[3]

23

24

25

26      [3]  Plaintiffs also allege that they have obtained relief under California Penal Code § 1203.4.
    Second Amended Complaint ¶¶ 28g, 29e, 30e, 31e, 32e, 33b, 34b.  However, they have abandoned their
27  argument (which was made in their First Amended Complaint) that, in light of this relief, their
    convictions have been expunged or set aside within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii), likely
28  because the Ninth Circuit rejected this argument in *Jennings v. Mukasey*, 511 F.3d 894 (9th Cir. 2007).

**B.      The National Instant Criminal Background Check System**

To prevent transfers of firearms to convicted felons and other prohibited persons including domestic violence misdemeanants, the Gun Control Act requires any individual attempting to purchase a firearm from a federally licensed firearms dealer to undergo a criminal background check.  *See* 18 U.S.C. § 922(t).  Pursuant to this requirement, a licensed firearms dealer or manufacturer collects certain identifying information from the potential purchaser and submits it to the National Instant Criminal Background Check System ("NICS"), which is operated by the FBI.  *See* 18 U.S.C. § 922(t)(1)(A); 28 C.F.R. §§ 25.6, 25.7(a).  The FBI searches the NICS database for criminal history which would prohibit the potential purchaser from possessing a firearms under federal or state law.  If the background check either reveals no prohibitive information, or three business days elapse, the sale is permitted to proceed.  *See* 18 U.S.C. § 922(t)(1)(B)(ii); 28 C.F.R. § 25.6(c)(iv).  If a NICS search identifies information that disqualifies the purchaser from possession of a firearms under state or federal law, NICS will issue a denial.  *See* 18 U.S.C. § 922(t); 28 C.F.R. § 25.6(c)(iv).

**C.      18 U.S.C. § 925A**

Under 18 U.S.C. § 925A, any person denied a firearm purchase pursuant to 18 U.S.C. § 922(s) or (t) and who was not prohibited from receipt of a firearm pursuant to 18 U.S.C. § 922(g) or (n), "may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be."  18 U.S.C. § 925A.

**III.  PROCEDURAL HISTORY**

Plaintiffs commenced this action on October 29, 2010.  Docket No. 1.  In their First Amended Complaint, plaintiffs sought a declaration that they had not been convicted of misdemeanor crimes of domestic violence within the meaning 18 U.S.C. § 921(a)(33)(B) and asserted that 18 U.S.C. §§ 922(d)(9) and 922(g)(9) violate the First, Second, Fifth and Tenth Amendments.  Docket No. 8.  The government filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on March 4, 2011; plaintiffs filed an Opposition on April 20, 2011; and the government filed a reply on April 27, 2011.  Docket Nos. 11, 12, 15.

1    On July 8, 2011, following the submission of supplemental briefs and oral argument, the Court

2    issued an Order granting in part and denying in part the government's motion to dismiss the First

3    Amended Complaint.  Docket No. 24.  With regard to plaintiffs' request for declaratory relief under 18

4    U.S.C. § 925A, the Court concluded that only plaintiff Enos had sufficiently alleged that he had

5    actually attempted to purchase a gun and, therefore, dismissed the declaratory relief claims brought by

6    plaintiffs Bastasini, Mercado, Groves, Monteiro, Erickson, and Newman with leave to amend.  Order at

7    8.  The Court concluded that "Enos may be able to maintain a claim for declaratory relief in light of the

8    shifting legal landscape after *Heller* and *McDonald*."  Order at 8.

9    With regard to plaintiffs' constitutional claims, the Court determined that only Enos had

10   standing to raise constitutional claims because only Enos had alleged that he had actually attempted to

11   purchase a gun.  Order at 9-10.  The Court dismissed Enos' claims under the First, Fifth and Tenth

12   Amendments with prejudice.  Order at 11-13.  With regard to Enos' Second Amendment claim, the

13   Court noted that Enos urged the Court in his supplemental brief not to dismiss his as-applied challenge,

14   arguing that § 922(g)(9) in conjunction with § 921(a)(33)(B)(ii) impose a lifetime ban on gun

15   ownership.  Order at 11.  The Court stated that it "will not dismiss Enos' Second Amendment claim at

16   this stage, as he may be able to maintain a claim."  Order at 11.[4]

17   Plaintiffs filed their Second Amended Complaint on August 29, 2011.  Docket No. 27.  In their

18   Second Amended Complaint, plaintiffs have abandoned their First, Fifth and Tenth Amendment

19   claims.  Plaintiffs have also abandoned any argument (to the extent one was made in the First Amended

20   Complaint) that obtaining relief from the state court under California Penal Code 1203.4 is the

21   equivalent of having a conviction "expunged or set aside" for purposes 18 U.S.C. § 921(a)(33)(B)(ii).

22                    **IV.  LEGAL STANDARDS ON THE MOTION TO DISMISS**

23   **A.      Federal Rule of Civil Procedure 12(b)(1)**

24   "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511

25   U.S. 375, 377 (1994).  "They possess only that power authorized by Constitution and statute, which is

26   not to be expanded by judicial decree."  *Id.* (internal citations omitted).  When a defendant brings a

27   _____

28   [4]  The Court also dismissed plaintiffs William Edwards and Jeff Loughran on improper joinder
and venue grounds. *See* Docket No. 20.

                                                    9

1  motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the

2  plaintiff has the burden of establishing subject matter jurisdiction.  *See Rattlesnake Coal. v. U.S. Envtl.*

3  *Prot. Agency*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).

4  **B.    Federal Rule of Civil Procedure 12(b)(6)**

5          The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the legal

6  sufficiency of the complaint.  *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

7  1983).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

8  true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

9  (2009) (*quoting  Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the

10  plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

11  is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of

12  a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

13                                    **V.  DISCUSSION**

14

15  **A.    Plaintiffs' Claims For Declaratory Relief Under 18 U.S.C. § 925A Lack Merit**

16          All of the plaintiffs seek a declaration, presumably under 18 U.S.C. § 925A, that they have had

17  their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  In addition, plaintiffs

18  Enos, Bastasini, Mercado, Groves, and Monteiro seek a declaration, also presumably under 18 U.S.C. §

19  925A, that they were not actually convicted of a misdemeanor crime of domestic violence because they

20  did not knowingly and intelligently waive their right to a jury trial in their underlying criminal

21  proceedings.  These claims fail, as explained below.

22          **1.    The Only Proper Defendant Under 18 U.S.C. § 925A Is The United States**

23          As an initial matter, the only proper defendant in a claim brought under 18 U.S.C. § 925A is the

24  United  States.  The express language of the statute in fact refers to the United States.  *See* 18 U.S.C. §

25  925A (stating that any person denied a firearm purchase pursuant to 18 U.S.C. § 922(s) or (t) and who

26  was not prohibited from receipt of a firearm pursuant to 18 U.S.C. § 922(g) or (n), "may bring an

27  action against the State or political subdivision responsible for providing the erroneous information, or

28  responsible for denying the transfer, or against the United States, as the case may be, for an order

1  directing that the erroneous information be corrected or that the transfer be approved, as the case may

2  be"). *See, e.g., Eibler v. Dep't of Treasury*, 311 F. Supp. 2d 618, 620 (N.D. Ohio 2004) ("Under 18

3  U.S.C. § 925A, a person denied a firearm purchase due to a NICS error, or who was not prohibited

4  from possessing a firearm under § 922(g), may sue the United States for an order directing that the

5  error be corrected or that the transfer of the weapon be approved."); *Richardson v. FBI*, 124 F. Supp.

6  2d 429, 430 (W.D. La. 2000) ("18 U.S.C. § 925A allows a person improperly denied a firearm due to

7  NICS error, or who was not prohibited from firearm possession under 18 U.S.C. § 922(g) or (n), to sue

8  the United States for an order directing that the error be corrected or that the transfer of the weapon be

9  approved."). Here, plaintiffs have not sued the United States. Instead, they have improperly sued Eric

10 Holder, the Attorney General, and Robert Mueller, the Director of the FBI, and these individuals

11 should be dismissed.

12  **2.**   **Plaintiffs Have Not Had Their "Civil Rights Restored" Within The Meaning of 18 U.S.C. § 921(a)(33)(B)(ii)**

13

14  Under 18 U.S.C. § 922(g)(9), it is unlawful for any person convicted of a misdemeanor crime of

15 domestic violence to possess a firearm. However, the definition of the term "misdemeanor crime of

16 domestic violence" includes the following exception:

17  A person shall not be considered to have been convicted of such an offense for purposes
    of this chapter if the conviction  has been expunged or set aside, or is an offense for
18  which the person has been pardoned or has had civil rights restored (if the law of the
    applicable jurisdiction provides for the loss of civil rights under such an offense) unless
19  the pardon, expungement, or restoration of civil rights, expressly provides that the
    person may not ship, transport, possess, or receive firearms.

20  18 U.S.C. § 921(a)(33)(B)(ii) (emphasis added).

21  Plaintiffs do not contend that their convictions have been expunged or set aside, or that they

22 have been pardoned. Instead, they seek a declaration, presumably under 18 U.S.C. § 925A, that they

23 have had their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii) under two

24 theories, neither of which has any merit.

25  **a.**   **California Penal Code § 12021(c)(1)**

26  Each of the plaintiffs argue that because California does not prohibit them from possessing

27 firearms due to the passage of 10 years since the dates of their convictions under California Penal Code

28 § 12021(c)(1), they have had their "civil rights restored" within the meaning of 18 U.S.C. §

1   921(a)(33)(B)(ii).  Second Amended Complaint ¶¶ 36c, 39b, and 42.  This argument lacks merit.

2       California Penal Code § 12021(c)(1) provides that a person who has been convicted of certain

3   misdemeanor violations, including under California Penal Code §§ 243 and 273.5, and who, within 10

4   years of the conviction, owns, purchases, receives, or has in his or her possession or under his or her

5   custody or control, any firearm is guilty of a public offense, which shall be punishable by

6   imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one

7   thousand dollars ($1,000), or by both that imprisonment and fine.  *See* Cal. Penal Code § 12021(c)(1).

8       Plaintiffs apparently believe that because they may possess a firearm without running afoul of

9   California Penal Code § 12021(c)(1), they have had their "civil rights restored" within the meaning of

10  18 U.S.C. § 921(a)(33)(B)(ii).  This is incorrect.  The test for whether one's civil rights have been

11  restored is whether the individual has lost and regained his right to vote, to sit on a jury, and to hold

12  public office.  *See United States v. Andaverde*, 64 F.3d 1305. 1309 (9th Cir. 1995) (stating that in

13  considering whether an individual's civil rights have been restored, "the Ninth Circuit considers

14  whether the felon has been restored the right to vote, sit on a jury, and hold public office"); *United*

15  *States v. Dahms*, 938 F.2d 131, 133 (9th Cir. 1991) (stating that an individual "who, having first lost

16  them upon conviction, regains the rights to vote, to sit on a jury and to hold public office in the state in

17  which he was originally convicted has had his civil rights restored . . . "); *United States v. Gomez*, 911

18  F.2d 219, 220 (9th Cir. 1990) (stating that the intent of Congress in using the phrase "civil rights

19  restored" under 18 U.S.C. § 921(a)(20) "was to give effect to state reforms with respect to the status of

20  an ex-convict"); *see also United States v. Essig*, 10 F.3d 968 (3d Cir. 1993) (adopting the definition of

21  sister circuits and concluding that "civil rights" encompasses the rights to vote, to hold public office,

22  and to sit on a jury); *United States v. Thomas*, 991 F.2d 206, 211 (5th Cir. 1993) (same); *United States v.*

23  *Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990) (same).

24      Plaintiffs do not allege that their rights to vote, to hold public office, and to sit on a jury were

25  lost and then restored following their convictions for misdemeanor crimes of domestic violence, nor

26  could they.  In California, as in most states, a conviction for a misdemeanor does not result in the loss

27  of civil rights.  *See People v. Haendiges*, 191 Cal. Rptr. 785, 798 n.2 (Cal. Ct. App. 1983) ("Moreover,

28  there are additional consequences of a felony conviction not present in misdemeanors, such as loss of

civil rights and being subject to impeachment in later trials.") (Foster, J., concurring); *see also People v. Murray*, 29 Cal. Rptr. 2d 42, 46 (Cal. Ct. App. 1994) ("When a misdemeanant has finished serving his sentence, he leaves with neither further obligation nor disability.") (quoting *In re Valenti*, 224 Cal. Rptr. 10, 12 (Cal. Ct. App. 1986)). Because plaintiffs cannot allege that their civil rights were taken away, they cannot allege that they have had their civil rights restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii). *See Logan v. United States*, 552 U.S. 23, 36 (2007) (stating that the "the words 'civil rights restored' do not cover a person whose civil rights were never taken away"); *United States v. Brailey*, 408 F.3d 609, 612 (9th Cir. 2005) ("When a defendant's 'civil rights were never taken away, it is impossible for those civil rights to have been 'restored.'"") (quoting *United States v. Jennings*, 323 F.3d 263, 267 (4th Cir. 2003)).

The fact that a state has restored an individual's right to possess firearms is insufficient. In *Andaverde*, the Ninth Circuit addressed this very issue in the context of 18 U.S.C. § 922(g)(1), the felon-in-possession statute, as follows:

> Andaverde first argues that, because Washington state law did not prohibit him from possessing a shotgun, he should be considered as having had his civil rights restored. Therefore, Andaverde contends, his conviction is not a conviction for § 922(g)(1)'s purposes.
>
> Andaverde is incorrect. In determining whether a felon continues to suffer a civil rights disability, the Ninth Circuit considers whether the felon has been restored the right to vote, sit on a jury, and hold public office. *United States v. Meeks*, 987 F.2d 575, 578 (9th Cir.), *cert. denied*, 510 U.S. 919, 114 S. Ct. 314, 126 L.Ed.2d 261 (1993); *United States v. Dahms*, 938 F.2d 131, 133 (9th Cir. 1991). Andaverde contends that this restoration analysis should turn on whether state law restores the right to bear arms. Even if, in determining whether a felon's civil rights have been restored, the court should look to state law giving felons the right to bear arms, the restoration of this single right does not prevent prosecution under § 922(g)(1). A restoration of rights must be "substantial," not merely de minimus. *Meeks*, 987 F.2d at 578; *Dahms*, 938 F.2d at 133. We held in *Meeks* that, under Missouri law, which allowed convicted felons to vote and hold office, but which did not restore the right to serve on a jury, to hold office as a sheriff, or to be a highway patrol officer, the defendant had not had his civil rights "substantially restored" and thus could be prosecuted under § 922(g)(1). *Meeks*, 987 F.2d at 578.

*Andaverde*, 64 F.3d at 1309 (internal footnote omitted); *see also United States v. Valerio*, 441 F.3d 837, 843 (9th Cir. 2006) (noting that the individual's right to vote and right to possess firearms had been restored, but holding "that is not enough"); *Brailey*, 408 F.3d at 613 ("Because Brailey's misdemeanor conviction did not remove Brailey's core civil rights of voting, serving as a juror, or holding public office, his civil rights have not been 'restored' within the meaning of federal law by

Utah's 2000 amendment permitting him to possess a firearm."); *United States v. Leuschen*, 395 F.3d 155, 160 (3d Cir. 2005) (stating that "[t]he absence of firearms restrictions, however, becomes relevant only if the convict's core civil rights have been restored" and "[i]f the defendant 'has not "had his civil rights restored," it simply does not matter what the state law provides concerning possession of firearms.'") (quoting *Thomas*, 991 F.2d at 211).

While *Andaverde*, *Valerio*, and *Brailey* were decided prior to *District of Columbia v. Heller*, 554 U.S. 570 (2008), this is irrelevant for two reasons. First, although the Supreme Court in *Heller* recognized an individual right to bear arms, this right is not among the cluster of "citizen" rights that states extend to individuals by virtue of citizenship within their borders – the right to vote, the right to hold elective office, and the right to sit on a jury. *See Cassidy*, 899 F.2d at 549 ("The fact that Congress used the term 'civil rights,' as opposed to 'all rights and privileges,' as the government would have us interpret the statute, indicates that Congress intended to encompass those rights accorded to an individual by virtue of his citizenship in a particular state. These rights include the right to vote, the right to seek and hold public office and the right to serve on a jury."); *McGrath v. United States*, 60 F.3d 1005, 1007 (2d Cir. 1995) ("The parties agree that the pertinent civil rights in question are those which most states extend by virtue of citizenship within their borders: (i) the right to vote; (ii) the right to hold elective office; and (iii) the right to sit on a jury."); *Nat'l Ass'n of Gov't Emps., Inc. v. Barrett*, 968 F. Supp. 1564, 1574 n.14 (N.D. Ga. 1997) ("Civil rights are described by most courts as the rights to vote, to serve on a jury, and to hold public office."); *Leuschen*, 395 F.3d at 160 ("If the defendant has not 'had his civil rights restored,' it simply does not matter what the state law provides concerning possession of firearms.") (internal quotation omitted).

Just as importantly, § 921(a)(33)(B)(ii) refers to civil rights in the plural. *See United States v. Keeney*, 241 F.3d 1040, 1044 (8th Cir. 2001) ("Significantly, § 921(a)(20) and § 921(a)(33)(B)(ii) both refer to civil rights in the plural, thus suggesting that Congress intended to include a cluster of rights, as referenced in *McGrath*, within the meaning of the term 'civil rights' as contained in these provisions."). The Ninth Circuit has already held that the restoration of rights must be "substantial" not merely de minimus. *See United States v. Meeks*, 987 F.2d 575, 578 (9th Cir. 1993) (holding that the restoration of civil rights must be "substantial" and that an individual whose rights to vote and hold office had been

1   restored, but not his right to serve on a jury, had not had his "civil rights restored"); *see also Essig*, 10

2   F.3d at 975 (rejecting argument that the restoration of two of three core civil rights constitutes the

3   restoration of civil rights for purposes of 18 U.S.C. § 921(a)(20)).  In this case, the restoration of a

4   single right – the right to possess firearms – does not rise to the level of a substantial restoration of

5   "civil rights" within the meaning of section 921(a)(33)(B)(ii) and Ninth Circuit case law.

6         Because plaintiffs do not allege and cannot establish that their civil rights to vote, to sit on a

7   jury, and to hold public office were taken away and restored following their convictions for

8   misdemeanor crimes of domestic violence, their argument that their civil rights have been restored by

9   virtue of  California Penal Code § 12021(c)(1) lacks merit.

10         **b.   California Penal Code § 12021(c)(3)**

11         In a related argument, Plaintiff Enos (but not the other plaintiffs) argues that because he has

12   received relief from the prohibition on firearms possession imposed by California Penal Code §

13   12021(c)(1) by a superior court judge pursuant to California Penal Code § 12021(c)(3), he has had his

14   "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).[5]  Second Amended

15   Complaint ¶ 35b.

16         Again, Enos apparently believes that because he obtained judicial relief from the prohibition on

17   firearm possession imposed by California Penal Code § 12021(c)(1), he has had his "civil rights

18

19        [5]  California Penal Code § 12021(c)(3) provides:

20

21         Any person who is subject to the prohibition imposed by this subdivision because of a
     conviction of an offense prior to that offense being added to paragraph (1) may

22         petition the court only once for relief from this prohibition.  The petition shall be filed
     with the court in which the petitioner was sentenced.  If possible, the matter shall be

23         heard before the same judge that sentenced the petitioner.  Upon filing the petition,
     the clerk of the court shall set the hearing date and notify the petitioner and the

24         prosecuting attorney of the date of the hearing.  Upon making [enumerated findings],
     the court may reduce or eliminate the prohibition, impose conditions on reduction or

25         elimination of the prohibition, or otherwise grant relief from the prohibition as the

26         court deems appropriate[.]

27

28

restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  This is incorrect for the same reasons

discussed above with respect to California Penal Code § 12021(c)(1) -- Enos has not, and cannot,

allege that his rights to vote, to sit on a jury, and to hold office were taken away and then restored

within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  *See Brailey*, 408 F.3d at 613 ("Because Brailey's

misdemeanor conviction did not remove Brailey's core civil rights of voting, serving as a juror, or

holding public office, his civil rights have not been 'restored' within the meaning of federal law by

Utah's 2000 amendment permitting him to possess a firearm."); *Valerio*, 441 F.3d at 842-43 (stating

that the fact that a state has restored an individual's right to possess firearms is "not enough").

### 3.    Plaintiffs' Claim That They Did Not Knowingly and Intelligently Waive Their Right To A Jury Trial Lacks Merit

Plaintiffs Enos, Bastasini, Mercado, Groves, and Monteiro (but not Erikson and Newman) seek

a declaration, again presumably pursuant to 18 U.S.C. § 925A, that they were not actually convicted of

a misdemeanor crime of domestic violence because they did not make knowing and intelligent waivers

of their right to a jury trial.  Under 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb), a person shall not be

considered to have been considered to be convicted of a misdemeanor crime of domestic violence

"unless the person knowingly and intelligently waived the right to have the case tried by a jury, by

guilty plea or otherwise."  These plaintiffs argue that they were not apprized of the possibility of losing

their right to possess a firearm when they pleaded *nolo contendere* or no contest to their misdemeanor

crimes of domestic violence because, at the time of their pleas, "there was no federal or state law

prohibiting Domestic Violence misdemeanants from acquiring/possessing firearms upon conviction."

Second Amended Complaint ¶¶ 36a, 39b.

This contention lacks merit.  When a person enters a guilty or no contest plea, he or she must be

advised of all direct consequences of the conviction.  *Bunnell v. Superior Court*, 13 Cal. 3d 592, 605

(1975).  This requirements relates to the primary and direct consequences involved in the criminal case

itself and not to secondary, indirect or collateral consequences.  *People v. Arnold*, 33 Cal. 4th 294, 309

(2004).  Direct consequences of a guilty plea include the statutory range of punishment for the

conviction, probation ineligibility, and a required term of parole.  *Bunnell*, 13 Cal. 3d at 605.  "A

collateral consequence is one which does not 'inexorably follow' from a conviction of the offense

involved in the plea." *People v. Crosby*, 5 Cal. Rptr. 2d 159, 160 (Cal. Ct. App. 1992). "The 'possible future use of a current conviction is not a direct consequences of the conviction.'" *People v. Gurule*, 28 Cal. 4th 557, 634 (2002) (quoting *People v. Bernal*, 27 Cal. Rptr. 2d 839, 840 (Cal. Ct. App. 1994)). "If a consequence is only collateral, no advisement is required." *Id.*

Plaintiffs acknowledge that, at the time of their pleas, individuals with convictions for misdemeanor crimes of domestic violence were not prohibited from possessing firearms and that 18 U.S.C. § 922(g)(9) was enacted in 1996 as part of the Omnibus Consolidated Appropriations Act of 1997 – years after their convictions. *See* Second Amended Complaint ¶¶ 36a, 39a. Accordingly, plaintiffs cannot reasonably argue that they were not apprized of a direct consequence of their conviction – the law obviously does not require defendants to be apprized of future unanticipated changes in the law.

**B.   Plaintiffs' Second Amendment Challenge to 18 U.S.C. § 922(g)(9) Is Meritless**

Plaintiffs argue that 18 U.S.C. § 922(g)(9) violates the Second Amendment, both facially and as applied. This argument lacks merit.

### 1.   *District of Columbia v. Heller*, 554 U.S. 570 (2008)

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court concluded that the Second Amendment protects an individual right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. The Court based this conclusion on an extensive analysis of the Amendment's text. In addition, because the Second Amendment has always been understood to codify "a *pre-existing* right," *id.* at 592 (emphasis added), *Heller* also considered the historical background of the right to keep and bear arms in England and the American colonies.

*Heller* then held unconstitutional two District of Columbia statutes to the extent they totally banned handgun possession in the home and required all other firearms within the home to be kept inoperable. *Id.* at 634-35. The Supreme Court "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions," *id.* at 634, concluding that "[u]nder any of the standards of scrutiny

that we have applied to enumerated constitutional rights," the District of Columbia's handgun ban "would fail constitutional muster." *Id.* at 628-29. In a footnote, however, the Court rejected the notion that rational basis scrutiny was appropriate, concluding that this test "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right . . .." *Id.* at 628 n.27. The Court also rejected an "interest-balancing" test proposed by Justice Breyer in dissent. *Id.* at 687-91.

At the same time, however, the Court made clear that "the right secured by the Second Amendment is not unlimited," *id.* at 626, and identified several "exceptions," *id.* at 635, which it characterized as "permissible" "regulations of the right[.]" The Court declared:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626-27. The Court further cautioned that "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Heller*, 554 U.S. at 627 n.26.

### 2.    Second Amendment Challenges to 18 U.S.C. § 922(g)(1)

Following *Heller*, the Ninth Circuit has concluded that 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms, does not violate the Second Amendment. *See United States v. Vongxay*, 594 F.3d 1111 (9th Cir.), *cert. denied*, 131 S. Ct. 294 (2010). The Ninth Circuit concluded that § 922(g)(1) falls within *Heller*'s list of presumptively lawful regulatory measures and does not require any further constitutional scrutiny. The Ninth Circuit stated:

> Vongxay cites no authority holding that 18 U.S.C. § 922(g)(1) violates the Second Amendment, but asserts that *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L.Ed.2d 637 (2008), requires that conclusion. He is mistaken. Nothing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1).
>
> . . . . The Court [in *Heller*] explained how such a disqualification could occur, stating:
>
> > . . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, *nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 128 S. Ct. at 2816-2817 (emphasis added) (internal citation omitted).  The Court further noted that "[w]e identify these *presumptively lawful regulatory measures* only as examples; our list does not purport to be exhaustive."  *Heller*, 128 S. Ct. at 2817, n. 26 (emphasis added).  Thus, felons are categorically different from the individuals who have a fundamental right to bear arms, and Vongxay's reliance on *Heller* is misplaced.

*Vongxay*, 594 F.3d at 1114-15 (footnote omitted).

Every other circuit that has addressed a Second Amendment challenge to 18 U.S.C. § 922(g)(1) on the merits has rejected the challenge.  *See United States v. Rozier*, 598 F.3d 768, 771 (11th Cir.), *cert. denied*, 130 S. Ct. 3399 ( 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010); *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011); *United States v. Williams*, 616 F.3d 685, 692-94 (7th Cir.), *cert. denied*, 131 S. Ct. 805 (2010); *United States v. Khami*, 2010 WL 273134, at *6-7 (6th Cir. Jan. 26, 2010), *cert. denied*, 130 S. Ct. 3345 (2010); *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir.), *cert. denied*, 129 S. Ct. 2814 (2009); *United States v. Barton*, 633 F.3d 168, 172-75 (3d Cir. 2011); *United States v. Torres–Rosario*, 2011 WL 4424823, at *1 (1st Cir. Sept. 23, 2011) ("All of the circuits to face the issue post *Heller* have rejected blanket challenges to felon in possession laws.").

### 3.      18 U.S.C. § 922(g)(9) Falls Within *Heller*'s List of Presumptively Lawful Prohibitions On The Right To Bear Arms

Like 18 U.S.C. § 922(g)(1), the statutory prohibition against the possession of firearms by persons convicted of a misdemeanor crime of domestic violence warrants inclusion on *Heller*'s list of presumptively lawful prohibitions on the right to bear arms.  *See, e.g., United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010) ("We now explicitly hold that § 922(g)(9) is a presumptively lawful 'longstanding prohibition on the possession of firearms.'"); *In re United States*, 578 F.3d 1195, 1200 (10th Cir. 2009) (order) ("Nothing suggests that the *Heller* dictum, which we must follow, is not inclusive of § 922(g)(9) involving those convicted of misdemeanor domestic violence."); *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011) ("Indeed, § 922(g)(9) fits comfortably among the categories of regulations that Heller suggested would be 'presumptively lawful.'").

Section 922(g)(9) prohibits firearms possession by persons who have been convicted of a "misdemeanor crime of domestic violence."  The statute serves a vital role because, as the Supreme Court has observed, "[f]irearms and domestic strife are a potentially deadly combination nationwide."

1   *United States v. Hayes*, 555 U.S. 415, 129 S. Ct. 1079, 1087 (2009).  In *Hayes*, the Supreme Court

2   explained why 18 U.S.C. § 922(g)(9) was enacted:

> Existing felon-in-possession laws, Congress recognized, were not keeping firearms out of the
> hands of domestic abusers, because "many people who engage in serious spousal or child abuse
> ultimately are not charged with or convicted of felonies."  142 Cong. Rec. 22985 (1996)
> (statement of Sen. Lautenberg).  By extending the federal firearm prohibition to persons
> convicted of "misdemeanor crime[s] of domestic violence," proponents of § 922(g)(9) sought to
> "close this dangerous loophole."  *Id.*, at 22986.
>
> Construing § 922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force
> statute (one that does not designate a domestic relationship as an element of the offense) would
> frustrate Congress' manifest purpose.  Firearms and domestic strife are a potentially deadly
> combination nationwide.

9   *Hayes*, 129 S. Ct. at 1087; *see also United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (en banc)

10   ("The belief underpinning § 922(g)(9) is that people who have been convicted of violence once –

11   toward a spouse, child, or domestic partner, no less – are likely to use violence again.").

12   Because § 922(g)(9) disarms people who have been convicted of violent criminal conduct, the

13   statute is "presumptively lawful" under the reasoning of *Heller*.  This conclusion follows from *Heller*'s

14   inclusion of laws prohibiting firearms possession on its list of "permissible" regulations.  This portion

15   of *Heller* explicitly recognized that persons may forfeit their Second Amendment right to bear arms

16   along with other rights when they commit serious crimes.  *Heller* made it clear that its list of Second

17   Amendment "exceptions" provided only "examples" of "presumptively lawful" regulations, and

18   warned lower courts not to view these examples as "exclusive."  *Heller*, 554 U.S. at 627 n.26.  There is

19   no difference between § 922(g)(9) and § 922(g)(1) for purposes of Second Amendment Analysis.

20   Although more recently enacted than § 922(g)(1), § 922(g)(9) "addresses the thorny problem of

21   domestic violence," which "Congress recognized was not remedied by 'longstanding' felon-in-

22   possession laws."  *White*, 593 F.3d at 1205-06.  More importantly, the case for deeming § 922(g)(9)

23   "presumptively lawful" is compelling because a person convicted under that statute must "have first

24   acted violently toward a family member or domestic partner."  *Id.*  "The public interest in a prohibition

25   on firearms possession is at its apex in circumstances . . . where a statute disarms persons who have

26   proven unable to control violent criminal impulses."  *People v. Flores*, 86 Cal. Rptr. 3d 804, 807 (Cal.

27   Ct. App. 2008).  Section 922(g)(1), by comparison, "does not distinguish between the violent and non-

28   violent offender."  *White*, 593 F.3d at 1206.  Accordingly, "as a predictor of firearm misuse, the

definitional net cast by § 922(g)(9) is tighter than the net cast by § 922(g)(1)." *United States v. Booker*, 570 F. Supp. 2d 161, 164 (D. Me. 2008), *aff'd*, 644 F.3d 12 (1st Cir. 2011). The Court should therefore extend the "presumption" of lawfulness that *Heller* conferred upon Section 922(g)(1) to Section 922(g)(9).

### 4.    18 U.S.C. § 922(g)(9) Withstands Intermediate Scrutiny

As discussed above, the statutory prohibition against the possession of firearms by persons convicted of a misdemeanor crime of domestic violence warrants inclusion on *Heller*'s list of presumptively lawful prohibitions on the right to bear arms, and no further constitutional scrutiny is required. However, assuming for purposes of argument that 18 U.S.C. § 922(g)(9) must withstand intermediate scrutiny, the statute is substantially related to an important governmental interest.[6] *See, e.g., United States v. Booker,* 644 F.3d 12 (1st Cir. 2011) (concluding that § 922(g)(9) withstands intermediate scrutiny); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc) (same); *Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms*, 2011 WL 3439412, at *7-8 (D. Md. Aug. 4, 2011) (same); *United States v. Smith*, 742 F. Supp. 2d 855, 870 (S.D.W. Va. 2010) (same); *United States v. Tooley*, 717 F. Supp. 2d 580, 598 (S.D.W. Va. 2010) (same); *United States v. Brown*, 715 F. Supp. 2d 688, 698 (E.D. Va. 2010) (same); *United States v. Walker*, 709 F. Supp. 2d 460, 467 (E.D. Va. 2010) (same).

To pass constitutional muster under intermediate scrutiny, the government must typically establish that the challenged law is substantially related to an important governmental interest. *See, e.g., Clark v. Jeter*, 486 U.S. 456, 461 (1988). Here, it cannot be disputed that the goal of § 922(g)(9), which is to prevent armed violence, is an important governmental interest. Congress's interest in protecting "the safety and indeed the lives of its citizens" is not merely "substantial" but "compelling." *United States v. Salerno*, 481 U.S. 739, 750, 755 (1987). In *Skoien*, the Seventh Circuit stated that "no one doubts that the goal of § 922(g)(9), preventing armed mayhem, is an important governmental

---

[6]   In *Vongxay*, 594 F.3d 1111 (9th Cir. 2010), the Ninth Circuit rejected the plaintiff's argument that his Equal Protection challenge to 18 U.S.C. § 922(g)(1) should be reviewed under strict scrutiny on the ground that the right to bear arms is a fundamental right. *See id.* 594 F.3d at 1118 & n.5. If any scrutiny is warranted, it would be at most intermediate scrutiny. *See, e.g., Skoien*, 614 F.3d at 641-45; *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010).

objective." *Skoien*, 614 F.3d at 642.[7]  In *Booker*, the First Circuit explained:

> Section 922(g)(9) finds its animating interest in keeping guns away from people who have been proven to engage in violence with those with whom they share a domestically intimate or familial relationship, or who live with them or the like.  This interest, which appears plainly on the face of the statute and is borne out by its legislative history, *see* 142 Cong. Rec. S8832 (statement of Sen. Lautenberg), is undeniably important.  *See Skoien*, 614 F.3d at 642 ("[N]o one doubts that the goal of § 922(g)(9), preventing mayhem, is an important governmental objective."); *cf. Carey v. Brown*, 447 U.S. 455, 271, 100 S. Ct. 2286, 65 L.Ed.2d 263 (1980) ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.").

*Booker*, 644 F.3d at 25.

Moreover, keeping firearms out of the hands of domestic abusers is substantially related to that important governmental interest.[8]  *See Booker*, 644 F.3d at 25 ("Nor can there be any question that there is a substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home.").  "Firearms and domestic strife are a potentially deadly combination nationwide." *Hayes*, 129 S. Ct. at 1087.  As explained in *Skoien*, "[d]omestic assaults with firearms are approximately twelve times more likely to end in the victim's death than are assaults by knives or fists." *Skoien*, 614 F.3d at 643.  Moreover, as also explained in *Skoien*, "the recidivism rate is high, implying that there are substantial benefits in keeping the most deadly weapons out of the hands of domestic abusers." *Id.* at 644;  *see also id.* at 642 ("The belief underpinning § 922(g)(9) is that people who have been convicted of violence once – toward a spouse, child, or domestic partner, no less – are likely to use violence again.").  "Domestic violence misdemeanants, even more so than most convicted felons, have

---

[7]  A survey of 16,000 Americans released in 2000 reported that a staggering 22.1% of American women had been physically assaulted by an intimate partner at some point in their lifetime.  United States Department of Justice, *Extent, Nature and Consequences of Intimate Partner Violence*, 11 (2000) (NVWS Report), *available at* http://www.ncjrs.gov/pdffiles1/nij/181867.pdf.

[8]  The government need not always produce empirical evidence to affirmatively establish the benefits of disarming criminals or other potentially dangerous individuals.  *See Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 391 (2000) ("The quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised.").  Even under strict scrutiny, the government may sometimes justify some restrictions on speech "based solely on history, consensus, and 'simple common sense.'" *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995).

1    demonstrated a specific propensity for violence and thus pose an[] unacceptable risk of firearm

2    misuse." *United States v. Chester*, 628 F.3d 673, 691 (4th Cir. 2010) (Davis, J., concurring).

3         In sum, even if § 922(g)(9) must withstand intermediate scrutiny, it does not violate the Second

4    Amendment because it is substantially promotes an important governmental interest in preventing

5    domestic gun violence.

6         **5.    Plaintiffs' "Lifetime Ban" Argument Fails**

7         Plaintiffs allege that § 922(g)(9) violates the Second Amendment because it imposes a "lifetime

8    ban" on the right to keep and bear arms.  Second Amended Complaint ¶ 46.  This claim fails.

9         The Seventh Circuit addressed the same "lifetime ban" argument as follows:

10        By the time this appeal reached oral argument *en banc*, Skoien's principal argument had
          shifted.  Instead of denying the logical and empirical basis of § 922(g)(9), he contended
11        that Congress overreached by creating a "perpetual" disqualification for persons
          convicted of domestic violence.  This goes too far, according to Skoien, because the
12        propensity for violence declines with advancing age, and people who are not convicted
          of additional offenses have demonstrated that they no longer pose risks to other
13        members of their households.  Applying § 922(g)(9) to older persons who have not been
          in legal trouble for many years cannot be substantially related to an important
14        governmental objective, the argument concludes.

15            Although the statute provides that expungement, pardon, or restoration of civil
          rights means that a conviction no longer disqualifies a person from possessing firearms,
16        see 18 U.S.C. § 921(a)(33)(B)(ii), Skoien maintains that, as a practical matter, these
          routes to restoration are unavailable to domestic-battery misdemeanants in Wisconsin.
17        We have our doubts.  As the Supreme Court observed in *Logan v. United States*, 552
          U.S. 23, 128 S. Ct. 475, 169 L.Ed.2d 432 (2007), although Wisconsin does not deprive
18        misdemeanants of the civil rights to vote, serve on a jury, or hold public office – so
          these rights cannot be "restored" by the passage of time, as felons' rights often are – the
19        state does give misdemeanants an opportunity to seek pardon or expungement.  Some of
          the largest states make expungement available as of right to misdemeanants who have a
20        clean record for a specified time. California, for example, has such a program.  Cal.
          Penal Code § 1203.4a.  See also Robert A. Mikos, *Enforcing State Law in Congress's
21        Shadow*, 90 Cornell L. Rev. 1411, 1463-64 & nn. 187, 188 (2005) (finding that
          expungement increases following enactment of § 922(g)(9)).  This means that §
22        922(g)(9) in its normal application does not create a perpetual and unjustified
          disqualification for a person who no longer is apt to attack other members of the
23        household.

24    *Skoien*, 614 F.3d at 644-45.

25        As discussed in *Skoien*, while plaintiffs may not be able to demonstrate that their civil rights

26    have been restored (because California does not deprive misdemeanants of the civil rights to vote,

27    serve on a jury, or hold pubic office), they offer no explanation whatsoever as to why they may not

28    pursue the relief that is available under California Penal Code § 1203.4a and why, consequently, §

922(g)(9) necessarily poses a "lifetime ban."[9]

Similarly the discussion in *Skoien*, in *United States v. Smith*, 742 F. Supp. 2d 855 (S.D.W. Va. 2010), the district court addressed the argument that § 922(g)(9) operates as a complete ban on firearm ownership in perpetuity, as follows:

> It is clear from the federal law that the majority of domestic violence offenders will not regain their firearms possession right.  However, there are procedures for the restoration of the right.  Namely, 18 U.S.C. § 921(a)(33)(B)(ii) excepts from the firearms ban individuals whose domestic violence convictions have been expunged, set aside, pardoned, or whose civil rights have been otherwise restored.  There is, therefore, a mechanism whereby domestic violence midemeanants can regain their right to lawfully keep and bear arms.  It is up to state legislatures to constrict or expand the ease with which convicted misdemeanants may apply for and receive relief under these measures.

> Even assuming Defendant is permanently banned from future firearm possession, the Court finds § 922(g)(9) reasonably tailored to accomplish the Government's compelling interest.  Domestic violence misdemeanants are, by statutory definition, violent criminals.  *See* 18 U.S.C. § 921(a)(33)(A)(I).  In Congress's judgment and as demonstrated by social scientists, domestic violence misdemeanants are prone to repeated acts of intrafamily violence.  Past domestic violence is an indicator of future crimes of violence, and Congress legislated with that trend in mind.

*Smith*, 742 F. Supp. 2d at 869.

Although plaintiffs appear to raise an "as-applied" challenge to the "lifetime ban" on firearms possession imposed by § 922(g)(9), "[t]o raise a successful as-applied challenge, [a plaintiff] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amended protections." *Barton*, 633 F.3d at 174.  In this case, plaintiffs have failed to allege any facts about themselves and their backgrounds that distinguish their circumstances from other domestic violence misdemeanants who face the firearm prohibition under § 922(g)(9).  While plaintiffs appear to suggest that their convictions are "minor" in comparison to those of individuals typically barred from possessing firearms under § 922(g)(9), *see* Second Amended Complaint ¶ 47, they fail to articulate why their convictions should be viewed as "minor" and the plaintiffs' victims would presumably disagree strongly with the plaintiffs' characterization of their

---

[9]  Plaintiffs allege they have obtained relief under California Penal Code § 1203.4, not § 1203.4a.  Second Amended Complaint ¶¶ 28g, 29e, 30e, 31e, 32e, 33b, 34b.  They have properly abandoned their argument (which was made in their First Amended Complaint) that relief under § 1203.4 constitutes an expungement of a conviction within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii), in light of *Jennings v. Mukasey*, 511 F.3d 894 (9th Cir. 2007).

1   crimes. *See Smith*, 742 F. Supp. 2d at 869 ("Domestic violence misdemeanants are, by statutory

2   definition, violent criminals.").[10]

3   **C.   Plaintiffs Lack Standing To Challenge The Constitutionality of 18 U.S.C. § 922(d)(9)**

4       Article III of the United States Constitution limits the jurisdiction of federal courts to cases and

5   controversies. *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

6   "Federal courts are presumed to lack jurisdiction, 'unless the contrary appears affirmatively from the

7   record.'" *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (internal citation omitted). "Standing is an

8   essential, core component of the case or controversy requirement." *San Diego Cty. Gun Rights*, 98

9   F.3d at 1126 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

10       Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing their

11   standing to sue. *See Lujan*, 504 U.S. at 561. At a minimum, they must demonstrate that they have

12   suffered an "injury in fact" to a legally protected interest that is both "concrete and particularized" and

13   "actual or imminent," as opposed to "conjectural" or "hypothetical." *Id.* at 560 (internal citations and

14   quotations omitted).

15       Although plaintiffs appear to be challenging the constitutionality of 18 U.S.C. § 922(d)(9), they

16   have no plausible basis for claiming standing to challenge that provision because they fail to allege

17   anywhere in their Second Amended Complaint that they intend to sell or otherwise dispose of any

18   firearms. *See Darring v. Kincheloe*, 783 F.2d 874, 877 (9th Cir. 1986) (stating that "[t]he federal courts

19   have historically been reluctant to recognize third-party standing"). Plaintiffs allege only that would

20   like to "acquire, keep and bear arms for, among other lawful purposes, self-defense in their homes."

21   Second Amended Complaint ¶¶ 28l, 29l, 30l, 31j, 32i, 33f, 34f.

22                  **VI.  CONCLUSION**

23       For the foregoing reasons, the defendants respectfully ask the Court to dismiss the action for

24   failure to state a claim under Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

25

26

27      [10] Because plaintiffs' as-applied challenge fails, they may not assert a facial challenge. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973) ("[A] person to whom a statute may constitutionally

28   be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the Court.").

1   Dated:   October 3, 2011                          BENJAMIN B. WAGNER
                                                      UNITED STATES ATTORNEY
2

3                                                     */s/ Edward A. Olsen*
                                                      EDWARD A. OLSEN
4                                                     Assistant United States Attorney

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES                 26