BENJAMIN B. WAGNER
United States Attorney
EDWARD A. OLSEN, CSBN 214150
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2821
Facsimile:  (916) 554-2900
Email: edward.olsen@usdoj.gov

Attorneys for Federal Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON, VERNON NEWMAN, <br><br> Plaintiffs, <br><br> v. <br><br> ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation, <br><br> Defendants. | CASE NO.  2:10-CV-02911-JAM-EFB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT** <br><br> Date:      January 25, 2012 <br> Time:     1:30 p.m. <br> Place:    Courtroom 6, 14th Floor <br> Judge:   Honorable John A. Mendez |

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**I. INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II. BACKGROUND**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    The National Instant Criminal Background Check System. . . . . . . . . . . . . . . . . . . . 5

**III. PROCEDURAL HISTORY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**IV. SUMMARY JUDGMENT METHODOLOGY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Fed. R. Civ. P. 54(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**V. DISCUSSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Plaintiffs' Claims For Declaratory Relief Under 18 U.S.C. § 925A Lack Merit. . . . . . . . 8

            1.    The Only Proper Defendant Under 18 U.S.C. § 925A
                   Is The United States. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            2.    Plaintiffs Have Not Had Their "Civil Rights Restored"
                   Within The Meaning of 18 U.S.C. § 921(a)(33)(B)(ii). . . . . . . . . . . . . . . . . . 10

                  a.    California Penal Code § 12021(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . 9

                  b.    California Penal Code § 12021(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . 13

            3.    Plaintiffs' Claim That They Were Not Convicted Of
                   Misdemeanor Crimes Of Domestic Violence Because
                   They Did Not Knowingly and Intelligently Waive
                   Their Right To A Jury Trial Lacks Merit. . . . . . . . . . . . . . . . . . . . . . . . . . 14

      B.    Plaintiffs' Second Amendment Challenge to 18 U.S.C. § 922(g)(9) Is Meritless. . . . . . 15

            1.    It Is Not Clear That Plaintiffs Are Pursuing Their Second
                   Amendment Challenge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            2.    *District of Columbia v. Heller*, 554 U.S. 570 (2008). . . . . . . . . . . . . . . . . 16

            3.    Second Amendment Challenges to 18 U.S.C. § 922(g)(1)
                   – An Analogous Statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            4.    18 U.S.C. § 922(g)(9) Falls Within *Heller*'s List of
                   Presumptively Lawful Prohibitions On The Right To Bear Arms. . . . . . . . . . . 18

            5.    18 U.S.C. § 922(g)(9) Withstands Intermediate Scrutiny. . . . . . . . . . . . . . . 20

                  a.    Strict Scrutiny Should Not Be Applied. . . . . . . . . . . . . . . . . . . . 20

i

|  |  | b. | 18 U.S.C. § 922(g)(9) Passes Muster Under Intermediate Scrutiny | 21 |

           6.    Plaintiffs' "Lifetime Ban" Argument Fails. .......................... 23

   C.   Plaintiffs Lack Standing To Challenge The Constitutionality of 18 U.S.C. § 922(d)(9). ................................................. 25

**VI. CONCLUSION**. .................................................................. 26

**TABLE OF AUTHORITIES**

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Carey v. Brown,*
    447 U.S. 455 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Celotex v. Catrett,*
    477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Chester v. United States,*
    628 F.3d 673 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 23

*Clark v. Jeter,*
    486 U.S. 456 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Darring v. Kincheloe,*
    783 F.2d 874 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*District of Columbia v. Heller,*
    554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 17

*Eibler v. Dep't of Treasury,*
    311 F. Supp. 2d 618 (N.D. Ohio 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jennings v.Mukasey,*
    511 F.3d 894 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Logan v. United States,*
    552 U.S. 23 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 24

*McGrath v. United States,*
    60 F.3d 1005 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nat'l Ass'n of Gov't Emps., Inc. v. Barrett,*
    968 F. Supp. 1564 (N.D. Ga. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nationwide Mut. Ins. Co. v. Liberatore,*
    408 F.3d 1158 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Padilla v. Kentucky,*
    ___ U.S. ___, 130 S. Ct. 1473 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Richardson v. FBI,*
    124 F. Supp. 2d 429 (W.D. La. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ross v. Fed. Bureau of Alcohol, Tobacco, and Firearms,*
    WL 3439412 (Aug. 4, 2011 D. Md. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re United States,*
   578 F.3d 1195 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Andaverde,*
   64 F.3d 1305 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Anderson,*
   559 F.3d 348 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Barton,*
   633 F.3d 168 (3d Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 25

*United States v. Booker,*
   644 F.3d at 4 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Booker,*
   570 F. Supp. 2d 161 (D. Me. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Booker,*
   644 F.3d 12 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21, 22

*United States v. Brailey,*
   408 F.3d 609 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

*United States v. Brown,*
   715 F. Supp. 2d 688 (E.D. Va. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Cassidy,*
   899 F.2d 543 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*United States v. Dahms,*
   938 F.2d 131 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Essig,*
   10 F.3d 968 (3d Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*United States v. Gomez,*
   911 F.2d 219 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Hayes,*
   555 U.S. 415, 129 S. Ct. 1079 (2009). . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21, 22

*United States v. Joos,*
   638 F.3d 581 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Khami,*
   2010 WL 273134 (6th Cir. Jan. 26, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Keeney,*
   241 F.3d 1040 (8th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Leuschen,*
   395 F.3d 155 (3d Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. McCane,*
   573 F.3d 1037 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Meeks,*
   987 F.2d 575 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Rozier,*
   598 F.3d 768 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Salerno,*
   481 U.S. 739 (1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Skoien,*
   614 F.3d 638 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22, 23, 24

*United States v. Smith,*
   742 F. Supp. 2d 855 (S.D.W. Va. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 24, 25

*United States v. St. Cyr,*
   533 U.S. 289 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Staten,*
   2011 WL 6016976 (4th Cir. Dec. 5, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Thomas,*
   991 F.2d 206 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Tooley,*
   717 F. Supp. 2d 580 (S.D.W. Va. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23, 24, 25

*United States v. Torres-Rosario,*
   658 F.3d 110 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Valerio,*
   441 F.3d 837 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Vongxay,*
   594 F.3d 1111 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Walker,*
   709 F. Supp. 2d 460 (E.D. Va. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. White,*
   593 F.3d 1199 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Williams,*
   616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATE CASES

*Bunnell v. Superior Court,*
   13 Cal. 3d 592 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Arnold,*
   33 Cal. 4th 294 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Bernal,*
 27 Cal. Rptr. 2d 839 (Cal. Ct. App. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Crosby,*
 5 Cal. Rptr. 2d 159 (Cal .Ct. App. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Flores,*
 86 Cal. Rptr. 3d 804 (Cal. Ct. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Gurule,*
 28 Cal. 4th 557 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Haendiges,*
 191 Cal. Rptr. 785 (Cal. Ct. App. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Murray,*
 29 Cal. Rptr. 2d 42 (Cal. Ct. App. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL STATUTES

18 U.S.C. § 921(a)(20). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

18 U.S.C. § 921(a)(33)(A)(I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 921(a)(33)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 921(a)(33)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 6, 7, 8, 9, 10, 13, 24

18 U.S.C. § 921(a)(33)(B)(i)(II)(bb). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

18 U.S.C. § 922(d)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 25

18 U.S.C. § 922(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17, 18

18 U.S.C. § 922(g)(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 10, 15, 16, 18, 20, 21

18 U.S.C. § 922(t). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

18 U.S.C. § 922(t)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 922(t)(1)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 925A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 8, 9, 14

28 U.S.C. § 2201-02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Fed. R. Civ. P. 54(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 C.F.R. §§ 25.6, 25.7(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 C.F.R. § 25.6(c)(iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

### REFERENCES TO THE CONGRESSIONAL RECORD

142 Cong. Rec. 22985 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

142 Cong. Rec. S8832. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

### STATE STATUTES

Cal. Penal Code § 1203.4a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Cal. Penal Code § 12021(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# I.  INTRODUCTION

Plaintiffs Richard Enos, Jeff Bastasini, Louie Mercado, Walter Groves, Manuel Monteiro, Edward Erikson, and Vernon Newman were each convicted of a misdemeanor crime of domestic violence under either California Penal Code § 273.5 (Willful Infliction of Corporal Injury to a Spouse/Cohabitant) or California Penal Code § 243(e) (Battery Against a Spouse/Cohabitant). Plaintiffs wish to acquire firearms but, under 18 U.S.C. § 922(g)(9), it is unlawful for any person convicted of a misdemeanor crime of domestic violence to possess a firearm.  The definition of the term "misdemeanor crime of domestic violence," however, includes the following exception:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights, expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii) (emphasis added).

Plaintiffs do not contend that their convictions have been expunged or set aside, or that they have been pardoned within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  Instead, they seek a declaration, presumably under 18 U.S.C. § 925A, that they have had their "civil rights restored" within the meaning of § 921(a)(33)(B)(ii) under two theories.  First, all of the plaintiffs argue that, although California Penal Code § 12021(c)(1) provides that a person who has been convicted under California Penal Code § 273.5 or California Penal Code § 243(e) may not possess a firearm within 10 years of his or her conviction, more than 10 years have elapsed since the dates of their convictions.[1]  Therefore, in plaintiffs' view, they have had their "civil rights restored" within the meaning of § 921(a)(33)(B)(ii) because they can now possess firearms without running afoul of California Penal Code § 12021(c)(1). Second, plaintiff Enos (but not the other plaintiffs) argues that, in addition to the fact that more than 10 years have elapsed since the date of his conviction, he received relief from the prohibition on firearms possession imposed by California Penal Code § 12021(c)(1) by a superior court judge pursuant to

---

[1]  Effective January 1, 2012, California Penal Code § 12021(c)(1) was repealed and reenacted without substantive change as California Penal Code § 29805.  For purposes of clarity, this Opposition will continue to refer to the statute as California Penal Code § 12021(c)(1).

California Penal Code § 12021(c)(3).[2]  Therefore, in Enos' view, he has had his "civil rights restored" within the meaning of § 921(a)(33)(B)(ii) for this additional reason.

Plaintiffs Enos, Bastasini, Mercado, Groves, and Monteiro (but not Erikson and Newman) also seek a declaration, presumably under 18 U.S.C. § 925A, that they were not actually convicted of a misdemeanor crime of domestic violence because they did not knowingly and intelligently waive their right to a jury trial.  *See* 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb) (providing that a person shall not be considered to have been convicted of a misdemeanor crime of domestic violence unless he or she knowingly and intelligently waived his or her right to have the case tried by a jury).  These plaintiffs argue that, prior to waiving their right to a jury, they were not apprized of the possibility of losing their right to possess a firearm because, at the time of their pleas, "there was no federal or state law prohibiting Domestic Violence misdemeanants from acquiring/possessing firearms upon conviction."

Finally, all of the plaintiffs allege that 18 U.S.C. § 922(g)(9), which makes it unlawful for any person convicted of a misdemeanor crime of domestic violence to possess a firearm, and 18 U.S.C. § 922(d)(9), which makes it unlawful for any person to sell or otherwise dispose of a firearm to a person who has been convicted of a misdemeanor crime of domestic violence, violate the Second Amendment.

Defendants respectfully ask the Court to deny plaintiffs' motion for summary judgment and to grant summary judgment in favor of defendants for the following reasons:  (1) the only proper defendant in a claim brought pursuant to 18 U.S.C. § 925A is the United States; (2) plaintiffs have not had their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii); (3) plaintiffs' assertion that they were not convicted of misdemeanor crimes of domestic violence because they did not knowingly and intelligently waive their right to a jury trial lacks merit; (4) 18 U.S.C. § 922(g)(9) does not violate the Second Amendment either facially or as applied; and (5) plaintiffs lack standing to challenge the constitutionality of 18 U.S.C. § 922(d)(9) and, in any event, appear to have abandoned this claim.

---

[2]  Effective January 1, 2012, California Penal Code § 12021(c)(3) was repealed and reenacted without substantive change as California Penal Code § 29860.  For purposes of clarity, this Opposition will continue to refer to the statute as California Penal Code § 12021(c)(3).

## II.  BACKGROUND

A.     **Factual Background**

Plaintiff Richard Enos alleges that he was convicted of a misdemeanor violation of California Penal Code § 273.5(a) (Willful Infliction of Corporal Injury) on or about July 15, 1991.[3]  Second Amended Complaint ¶ 28a; Declaration of Richard Enos ¶ 3.  On June 16, 2000, a superior court judge granted Enos' petition for relief under California Penal Code § 12021(c) from the ten-year prohibition on possessing firearms that California Penal Code § 12021(a) imposes on individuals convicted of misdemeanor crimes of domestic violence.  Second Amended Complaint ¶¶ 28g; Enos Declaration ¶ 10.  Enos declares that, in August of 2004, he was "denied a firearm purchase and advised by the State of California that the denial was being maintained by U.S. Department of Justice, Federal Bureau of Investigation, National Instant Criminal Background Check System."  Second Amended Complaint ¶ 28i; Enos Declaration ¶ 12.

Plaintiff Jeff Bastasini alleges that he was convicted of two counts of misdemeanor violations of California Penal Code § 273.5 and California Penal Code § 242 (Battery) on March 25, 1991. Second Amended Complaint ¶ 29a; Bastasini Declaration ¶ 2.  He alleges that, on July 11, 2011, he applied for a firearm purchase at a federally-licensed firearms dealer and filled out the ATF Form 4473 (5300.9).  Second Amended Complaint ¶ 29h; Bastasini Declaration ¶ 10.  On the form, he truthfully answered "YES" to Question 11.i.[4]  *Id.*  He adds that, on July 18, 2011, he was denied a firearms

---

[3]  California Penal Code § 273.5(a) provides:

Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both that fine and imprisonment.

[4]  Question 11.i asks: Have you ever been convicted in any court of a misdemeanor crime of domestic violence?  The instruction for Question 11.i provides that a person who has been convicted of a misdemeanor crime of domestic violence is not prohibited from purchasing, receiving, or possessing a firearm if, under the law of the jurisdiction where the conviction occurred, the person "has had their civil rights (the right to vote, sit on a jury, and hold public office) taken away and later restored" and the

purchase and, upon making an inquiry to the California Department of Justice, was informed that the reason for the denial was that federal law prohibited his clearance to purchase the gun and that he should direct his questions to federal authorities.  Second Amended Complaint ¶ 29i; Bastasini Declaration ¶ 11.

Plaintiff Louie Mercado alleges that he was convicted of a misdemeanor violation of California Penal Code § 273.5 on December 17, 1990.  Second Amended Complaint ¶ 30a; Mercado Declaration ¶ 3.  He alleges that, on July 12, 2011, he applied for a firearm purchase at a federally-licensed firearms dealer and filled out the ATF Form 4473 (5300.9).  Second Amended Complaint ¶30h; Mercado Declaration ¶ 12.  On the form, he truthfully answered "YES" to Question 11.ii.  *Id*.  He adds that, on same day (July 12, 2011), he was denied a firearm purchase.  Second Amended Complaint ¶ 30i; Mercado Declaration ¶ 13.  Upon making an inquiry to the dealer, Mercado was informed that answering "YES" to Question 11.i on ATF Form 4473 (5300.9) required the dealer to stop the transaction and deny the purchase.  *Id.*

Plaintiff Walter Groves alleges that he was convicted of a misdemeanor violation of California Penal Code § 273.5 on January 12, 1990.  Second Amended Complaint ¶ 31a; Groves Declaration ¶ 3. He alleges that, on September 26, 2005, he was denied a firearms purchase and "informed that federal law prohibited California from clearing his firearms purchase."  Second Amended Complaint ¶ 31f; Groves Declaration ¶ 10.  On or about July 18, 2011, Groves again attempted to purchase a firearm, but the federally-licensed firearms dealer refused to complete the application process because Groves truthfully answered "YES" to Question 11.i on ATF Form 4473 (5300.9).  Second Amended Complaint 31g; Groves Declaration ¶ 11.

Plaintiff Manuel Monteiro alleges that he was convicted of a misdemeanor violation of California Penal Code § 273.5 on May 27, 1992.  Second Amended Complaint ¶ 32a; Monteiro Declaration ¶ 3.  He alleges that, on July 14, 2011, he was denied a firearm purchase and was informed by the California Department of Justice that the denial "was based on the Federal Brady Act."  Second

person is not prohibited by the law of the jurisdiction where the conviction occurred from receiving or possessing firearms."  The instruction provides that persons subject to this exception should answer "NO" to Question 11.i.  Docket No. 13.

Amended Complaint ¶ 32f; Monteiro Declaration ¶ 9.

Plaintiff Edward Erikson alleges that he was convicted of a misdemeanor violation of California Penal Code § 273.5 on June 3, 1996.  Second Amended Complaint ¶ 33a; Erikson Declaration ¶ 3.  He alleges that, on or about July 19, 2011, he was denied a firearm purchase "when the dealer refused to process his application for a transfer due to his truthful answer of "YES" to question 11.ii on the ATF Form 4473 (5300.9)."  Second Amended Complaint ¶33.c; Erikson Declaration ¶ 6.

Plaintiff Vernon Newman alleges that he was convicted of a misdemeanor violation of California Penal Code § 243(e) (Battery Against a Spouse/Cohabitant) on September 17, 1998.[5] Second Amended Complaint ¶ 34a; Vernon Declaration ¶ 3.  He alleges that, on or about August 1, 2011, he was denied a firearm purchase by the California Department of Justice after truthfully answering "YES" to Question 11.i on ATF Form 4473 (5300.9).  Second Amended Complaint ¶ 34c; Vernon Declaration ¶ 6.[6]

**B.     The National Instant Criminal Background Check System**

To prevent transfers of firearms to convicted felons and other prohibited persons including domestic violence misdemeanants, the Gun Control Act requires any individual attempting to purchase a firearm from a federally licensed firearms dealer to undergo a criminal background check.  *See* 18 U.S.C. § 922(t).  Pursuant to this requirement, a licensed firearms dealer or manufacturer collects certain identifying information from the potential purchaser and submits it to the National Instant

---

[5]  California Penal Code § 243(e)(1) provides in relevant part:

When a battery is committed against a spouse, a person with whom the defendant is cohabiting, a person wh is the parent of the defendant's child, former spouse, fiancé, or fiancee, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship, the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment.

[6]  Plaintiffs also maintain that they have obtained relief under California Penal Code § 1203.4. See Second Amended Complaint ¶¶ 28g, 29e, 30e, 31e, 32e, 33b, 34b.  However, they have abandoned their argument (which was made in the First Amended Complaint) that, in light of this relief, their convictions have been expunged or set aside within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii) – likely because the Ninth Circuit rejected such an argument in *Jennings v.Mukasey*, 511 F.3d 894 (9th Cir. 2007).

5

Criminal Background Check System ("NICS"), which is operated by the FBI.  *See* 18 U.S.C.  §

922(t)(1)(A); 28 C.F.R. §§ 25.6, 25.7(a).  The FBI searches the NICS database for criminal history

which would prohibit the potential purchaser from possessing a firearms under federal or state law.  If

the background check either reveals no prohibitive information, or three business days elapse, the sale

is permitted to proceed.  *See* 18 U.S.C. § 922(t)(1)(B)(ii); 28 C.F.R. § 25.6(c)(iv).  If a NICS search

identifies information that disqualifies the purchaser from possession of a firearms under state or

federal law, NICS will issue a denial.  *See* 18 U.S.C. § 922(t); 28 C.F.R. § 25.6(c)(iv).

### III.  PROCEDURAL HISTORY

Plaintiffs commenced this action on October 29, 2010.  Docket No. 1.  In their First Amended

Complaint, plaintiffs sought a declaration that they had not been convicted of misdemeanor crimes of

domestic violence within the meaning 18 U.S.C. § 921(a)(33)(B) and asserted that 18 U.S.C. §§

922(d)(9) and 922(g)(9) violate the First, Second, Fifth and Tenth Amendments.  Docket No. 8.  The

government filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on

March 4, 2011; plaintiffs filed an Opposition on April 20, 2011; and the government filed a reply on

April 27, 2011.  Docket Nos. 11, 12, 15.

On July 8, 2011, following a hearing on the government's motion to dismiss and the submission

of supplemental briefs, the Court issued an Order granting in part and denying in part the government's

motion to dismiss the First Amended Complaint.  Docket No. 24.  With regard to plaintiffs' request for

declaratory relief under 18 U.S.C. § 925A, the Court concluded that only plaintiff Enos had sufficiently

alleged that he had actually attempted to purchase a gun and, therefore, dismissed the declaratory relief

claims brought by plaintiffs Bastasini, Mercado, Groves, Monteiro, Erickson, and Newman with leave

to amend.  Order at 8.  The Court concluded that "Enos may be able to maintain a claim for declaratory

relief in light of the shifting legal landscape after *Heller* and *McDonald*."  Order at 8.

With regard to plaintiffs' constitutional claims, the Court determined that only Enos had

standing to raise constitutional claims because only Enos had alleged that he had actually attempted to

purchase a gun.  Order at 9-10.  The Court dismissed Enos' claims under the First, Fifth and Tenth

Amendments with prejudice.  Order at 11-13.  With regard to Enos' Second Amendment claim, the

Court noted that Enos urged the Court in his supplemental brief not to dismiss his as-applied challenge,

arguing that § 922(g)(9) in conjunction with § 921(a)(33)(B)(ii) impose a lifetime ban on gun ownership.  Order at 11.  The Court stated that it "will not dismiss Enos' Second Amendment claim at this stage, as he may be able to maintain a claim."  Order at 11.[7]

Plaintiffs filed their Second Amended Complaint on August 29, 2011.  Docket No. 27.  In their Second Amended Complaint, plaintiffs abandoned their First, Fifth and Tenth Amendment claims. Plaintiffs also abandoned any argument (to the extent one was made in the First Amended Complaint) that obtaining relief from the state court under California Penal Code § 1203.4 is the equivalent of having a conviction "expunged or set aside" for purposes 18 U.S.C. § 921(a)(33)(B)(ii).  Plaintiffs did, however, add allegations regarding each plaintiff's unsuccessful attempt to purchase a firearm.

Defendants filed a motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on October 3, 2011.  Plaintiffs' opposition to that motion is due on January 11, 2011.

Plaintiffs filed a motion for summary judgment and/or partial summary judgment on December 19, 2011.  Defendants hereby oppose the motion and ask the Court to grant summary judgment in their favor because the material facts are not in dispute and defendants are entitled to judgment as a matter of law.

## IV.  SUMMARY JUDGMENT METHODOLOGY

**A.    Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986).  That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its initial burden, the nonmoving party must identify facts which show a genuine issue for trial. *See id.* at 323-24.  The

---

[7]  The Court also dismissed plaintiffs William Edwards and Jeff Loughran on improper joinder and venue grounds. *See* Docket No. 20.  These individuals are not named in plaintiffs' Second Amended Complaint.

opposing party may not "rest on mere allegation[s] or denials of his pleading[s]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Instead, the opposing party must go beyond the pleadings to designate specific facts showing the existence of genuine issues for trial. *See Celotex*, 477 U.S. at 324-25. A genuine issue exists only when a reasonable jury could return a verdict for the opposing party. *See Anderson*, 477 U.S. at 247-49. "The moving party is entitled to a judgment as a matter of law" when the opposing party fails to make a sufficient showing on an essential element of its case. *Celotex*, 477 U.S. at 323.

**B.    Fed. R. Civ. P. 54(b)**

Plaintiffs' references to partial summary judgment and Fed. R. Civ. P. 54(b) are, frankly, difficult to understand. *See* Plaintiffs' Motion for Summary Judgment at 2-4. Plaintiffs correctly argue that if the Court concludes as a matter of statutory interpretation that their civil rights have been restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii), it would be unnecessary for the Court to reach their argument that 18 U.S.C. § 922(g)(9) violates the Second Amendment. However, if the Court were to agree with plaintiffs' statutory interpretation argument and decide not to reach the plaintiffs' constitutional claim, the Court would simply grant plaintiffs' motion for summary judgment and issue a final judgment in plaintiffs' favor. The Court would not grant "partial" summary judgment because no issues would remain in the case. Further, there would be no need for the Court to enter a Rule 54(b) judgment because there would be no remaining claims still to be tried. *See* Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however, designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

## V.  DISCUSSION

**A.    Plaintiffs' Claims For Declaratory Relief Under 18 U.S.C. § 925A Lack Merit**

All of the plaintiffs seek a declaration, presumably under 18 U.S.C. § 925A, that they have had

their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).[8]  In addition, plaintiffs Enos, Bastasini, Mercado, Groves, and Monteiro (but not Erikson and Newman) seek a declaration, also presumably under 18 U.S.C. § 925A, that they were not actually convicted of a misdemeanor crime of domestic violence because they did not knowingly and intelligently waive their right to a jury trial in their underlying criminal proceedings.  These claims fail, as explained below.

### 1.    The Only Proper Defendant Under 18 U.S.C. § 925A Is The United States

As an initial matter, the only proper defendant in a claim brought under 18 U.S.C. § 925A is the United States.  The express language of the statute in fact refers to the United States.  The statute provides in relevant part:

Any person denied a firearm pursuant to subsections (s) or (t) of section 922 --

(1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or

(2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) or section 922,

may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be.  In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

18 U.S.C. § 925A; *see also Eibler v. Dep't of Treasury*, 311 F. Supp. 2d 618, 620 (N.D. Ohio 2004) ("Under 18 U.S.C. § 925A, a person denied a firearm purchase due to a NICS error, or who was not prohibited from possessing a firearm under § 922(g), may sue the United States for an order directing that the error be corrected or that the transfer of the weapon be approved."); *Richardson v. FBI*, 124 F. Supp. 2d 429, 430 (W.D. La. 2000) ("18 U.S.C. § 925A allows a person improperly denied a firearm due to NICS error, or who was not prohibited from firearm possession under 18 U.S.C. § 922(g) or (n), to sue the United States for an order directing that the error be corrected or that the transfer of the weapon be approved.").

---

[8]  The Declaratory Judgment Act, 28 U.S.C. § 2201-02, does not by itself confer federal subject matter jurisdiction.  *See Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005).

Here, plaintiffs have not sued the United States.  Instead, they have improperly sued Eric Holder, the Attorney General, and Robert Mueller, the Director of the FBI, and these individuals should be dismissed.

**2.    Plaintiffs Have Not Had Their "Civil Rights Restored" Within The Meaning of 18 U.S.C. § 921(a)(33)(B)(ii)**

Under 18 U.S.C. § 922(g)(9), it is unlawful for any person convicted of a misdemeanor crime of domestic violence to possess a firearm.  However, the definition of the term "misdemeanor crime of domestic violence" includes the following exception:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction  has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights, expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(33)(B)(ii) (emphasis added).

Plaintiffs do not contend that their convictions have been expunged or set aside, or that they have been pardoned.  Instead, they seek a declaration, presumably under 18 U.S.C. § 925A, that they have had their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii) under two theories, neither of which has any merit.

a.    California Penal Code § 12021(c)(1)

Each of the plaintiffs argue that because California does not prohibit them from possessing firearms (due to the passage of 10 years since the dates of their convictions under California Penal Code § 12021(c)(1)), they have had their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  This argument lacks merit.

California Penal Code § 12021(c)(1) provides that a person who has been convicted of certain misdemeanor violations, including under California Penal Code §§ 243 and 273.5, and who, within 10 years of the conviction, owns, purchases, receives, or has in his or her possession or under his or her custody or control, any firearm is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.  *See* Cal. Penal Code § 12021(c)(1) (now codified at California Penal Code § 29805).

Plaintiffs apparently believe that because they may possess a firearm without running afoul of California Penal Code § 12021(c)(1), they have had their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  This is incorrect.  The test for whether one's civil rights have been restored is whether the individual has lost and regained his right to vote, to sit on a jury, and to hold public office.  *See United States v. Andaverde*, 64 F.3d 1305, 1309 (9th Cir. 1995) (stating that in considering whether an individual's civil rights have been restored, "the Ninth Circuit considers whether the felon has been restored the right to vote, sit on a jury, and hold public office."); *United States v. Dahms*, 938 F.2d 131, 133 (9th Cir. 1991) (stating that an individual "who, having first lost them upon conviction, regains the rights to vote, to sit on a jury and to hold public office in the state in which he was convicted has had his civil rights restored . . . "); *United States v. Gomez*, 911 F.2d 219, 220 (9th Cir. 1990) (stating that the intent of Congress in using the phrase "civil rights restored" under 18 U.S.C. § 921(a)(20) "was to give effect to state reforms with respect to the status of an ex-convict."); *see also United States v.  Essig*, 10 F.3d 968 (3d Cir. 1993) (adopting the definition of sister circuits and concluding that "civil rights" encompasses the rights to vote, to hold public office, and to sit on a jury); *United States v. Thomas*, 991 F.2d 206, 211 (5th Cir. 1993) (same); *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990) (same).

Plaintiffs do not allege that their rights to vote, to hold public office, and to sit on a jury were lost and then restored following their convictions for misdemeanor crimes of domestic violence, nor could they.  In California, as in most states, a conviction for a misdemeanor does not result in the loss of civil rights.  *See People v. Haendiges*, 191 Cal. Rptr. 785, 798 n.2 (Cal. Ct. App. 1983) ("Moreover, there are additional consequences of a felony conviction not present in misdemeanors, such as loss of civil rights and being subject to impeachment in later trials.") (Foster, J., concurring);  *see also People v. Murray*, 29 Cal. Rptr. 2d 42, 46 (Cal. Ct. App. 1994) ("When a misdemeanant has finished serving his sentence, he leaves with neither further obligation nor disability.") (quoting *In re Valenti*, 224 Cal. Rptr. 10, 12 (Cal. Ct. App. 1986)).  Because plaintiffs cannot allege that their civil rights were taken away, they cannot allege that they have had their civil rights restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).  *See Logan v. United States*, 552 U.S. 23, 36 (2007) (stating that the "the words 'civil rights restored' do not cover a person whose civil rights were never taken away."); *United States v.*

*Brailey*, 408 F.3d 609, 612 (9th Cir. 2005) ("When a defendants 'civil rights were never taken away, it is impossible for those civil rights to have been 'restored.'") (quoting *United States v. Jennings*, 323 F.3d 263, 267 (4th Cir. 2003)).

The fact that a state has restored an individual's right to possess firearms is insufficient. In *Andaverde*, the Ninth Circuit addressed this very issue in the context of 18 U.S.C. § 922(g)(1), the analogous felon-in-possession statute, as follows:

> Andaverde first argues that, because Washington state law did not prohibit him from possessing a shotgun, he should be considered as having had his civil rights restored. Therefore, Andaverde contends, his conviction is not a conviction for § 922(g)(1)'s purposes.
>
> Andaverde is incorrect. In determining whether a felon continues to suffer a civil rights disability, the Ninth Circuit considers whether the felon has been restored the right to vote, sit on a jury, and hold public office. *United States v. Meeks*, 987 F.2d 575, 578 (9th Cir.), *cert. denied*, 510 U.S. 919, 114 S. Ct. 314, 126 L.Ed.2d 261 (1993); *United States v. Dahms*, 938 F.2d 131, 133 (9th Cir. 1991). Andaverde contends that this restoration analysis should turn on whether state law restores the right to bear arms. Even if, in determining whether a felon's civil rights have been restored, the court should look to state law giving felons the right to bear arms, the restoration of this single right does not prevent prosecution under § 922(g)(1). A restoration of rights must be "substantial," not merely de minimus. *Meeks*, 987 F.2d at 578; *Dahms*, 938 F.2d at 133. We held in *Meeks* that, under Missouri law, which allowed convicted felons to vote and hold office, but which did not restore the right to serve on a jury, to hold office as a sheriff, or to be a highway patrol officer, the defendant had not had his civil rights "substantially restored" and thus could be prosecuted under § 922(g)(1). *Meeks*, 987 F.2d at 578. In contrast, the *Dahms* court ruled that a defendant who had been restored the right to vote, hold public office, and serve on a jury had had his rights substantially restored within the meaning of § 921(a)(20). *Dahms*, 938 F.2d at 134.

*Andaverde*, 64 F.3d at 1309; *see also United States v. Valerio*, 441 F.3d 837, 843 (9th Cir. 2006) (noting that the individual's right to vote and right to possess firearms had been restored, but holding "that is not enough."); *Brailey*, 408 F.3d at 613 (9th Cir. 2005) ("Because Brailey's misdemeanor conviction did not remove Brailey's core civil rights of voting, serving as a juror, or holding public office, his civil rights have not been 'restored' within the meaning of federal law by Utah's 2000 amendment permitting him to own a firearm."); *United States v. Leuschen*, 395 F.3d 155, 160 (3d Cir. 2005) (stating that "[t]he absence of firearms restrictions, however, becomes relevant only if the convict's core civil rights have been restored" and "[i]f the defendant has not 'had his civil rights restored,' it simply does not matter what the state law provides concerning possession of firearms.") (quoting *Thomas*, 991 F.2d at 211).

While plaintiffs point out that *Andaverde*, *Valerio*, and *Brailey* were decided prior to *District of Columbia v. Heller*, 554 U.S. 570 (2008), this is irrelevant for two reasons.  First, although the Supreme Court in *Heller* recognized an individual right to bear arms, this right is not among the cluster of "citizen" rights that states extend to individuals by virtue of citizenship within their borders – the right to vote, the right to hold elective office, and the right to sit on a jury.  *See Cassidy*, 899 F.2d at 549 ("The fact that Congress used the term 'civil rights,' as opposed to 'all rights and privileges,' as the government would have us interpret the statute, indicates that Congress intended to encompass those rights accorded to an individual by virtue of his citizenship in a particular state.  These rights include the right to vote, the right to seek and hold public office and the right to serve on a jury."); *McGrath v. United States*, 60 F.3d 1005, 1007 (2d Cir. 1995) ("The parties agree that the pertinent civil rights in question are those which most states extend by virtue of citizenship within their borders: (i) the right to vote; (ii) the right to hold elective office; and (iii) the right to sit on a jury."); *Nat'l Ass'n of Gov't Emps., Inc. v. Barrett*, 968 F. Supp. 1564, 1574 n.4 (N.D. Ga. 1997) ("Civil rights are described by most courts as the rights to vote, to serve on a jury, and to hold public office."); *Leuschen*, 395 F.3d at 160 ("If the defendant has not 'had his civil rights restored,' it simply does not matter what the state law provides concerning possession of firearms.").

Moreover, § 921(a)(33)(B)(ii) refers to "civil rights" in the plural.  *See United States v. Keeney*, 241 F.3d 1040, 1044 (8th Cir. 2001) ("Significantly, § 921(a)(20) and § 921(a)(33)(B)(ii) both refer to civil rights in the plural, thus suggesting that Congress intended to include a cluster of rights, as referenced in *McGrath*, within the meaning of the term "civil rights" as contained in these provisions."); *see also United States v. Meeks*, 987 F.2d 575, 578 (9th Cir. 1993) (holding that an individual whose rights to vote and hold office had been restored, but not his right to serve on a jury, had not had his "civil rights restored."); *Essig*, 10 F.3d at 975 (rejecting argument that the restoration of two of three core civil rights constitutes the restoration of civil rights for purposes of 18 U.S.C. § 921(a)(20)).  In this case, the restoration of a single right – the right to possess firearms – does not rise to the level of a restoration of "civil rights" within the plain language of  § 921(a)(33)(B)(ii).

Because plaintiffs do not allege and have not established that their civil rights to vote, to sit on a jury, and to hold public office were taken away and then restored following their convictions for

misdemeanor crimes of domestic violence, their argument that their civil rights have been restored by virtue of California Penal Code § 12021(c)(1) lacks merit.

### b.   California Penal Code § 12021(c)(3)

In a related argument, Plaintiff Enos (but not the other plaintiffs) argues that because he has received relief from the prohibition on firearms possession imposed by California Penal Code § 12021(c)(1) by a superior court judge pursuant to California Penal Code § 12021(c)(3), he has had his "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii).[9] Second Amended Complaint ¶ 36b; Enos Declaration ¶ 10.

Enos apparently believes that because he obtained judicial relief from the prohibition on firearm possession imposed by California Penal Code § 12021(c)(1), he has had his "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii). This is incorrect for the same reasons discussed above with respect to California Penal Code § 12021(c)(1) -- Enos has not alleged or established that his rights to vote, to sit on a jury, and to hold office were taken away and then restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii). *See Brailey*, 408 F.3d at 613 ("Because Brailey's misdemeanor conviction did not remove Brailey's core civil rights of voting, serving as a juror, or holding public office, his civil rights have not been 'restored' within the meaning of federal law by Utah's 2000 amendment permitting him to own a firearm."); *Valerio*, 441 F.3d at 842-43 (stating that

---

[9]   California Penal Code § 12021(c)(3) provides:

> Any person who is subject to the prohibition imposed by this subdivision because of a conviction of an offense prior to that offense being added to paragraph (1) may petition the court only once for relief from this prohibition. The petition shall be filed with the court in which the petitioner was sentenced. If possible, the matter shall be heard before the same judge that sentenced the petitioner. Upon filing the petition, the clerk of the court shall set the hearing date and notify the petitioner and the prosecuting attorney of the date of the hearing. Upon making [enumerated findings], the court may reduce or eliminate the prohibition, impose conditions on reduction or elimination of the prohibition, or otherwise grant relief from the prohibition as the court deems appropriate[.]

California Penal Code § 12021(c)(3) (now codified at California Penal Code § 29860).

the fact that a state has restored an individual's right to possess firearms is "not enough").

### 3. Plaintiffs' Claim That They Were Not Convicted Of Misdemeanor Crimes Of Domestic Violence Because They Did Not Knowingly and Intelligently Waive Their Right To A Jury Trial Lacks Merit

Plaintiffs Enos, Bastasini, Mercado, Groves, and Monteiro (but not Erikson and Newman) seek a declaration, again presumably pursuant to 18 U.S.C. § 925A, that they were not actually convicted of a misdemeanor crime of domestic violence because they did not make a knowing and intelligent waiver of their right to a jury trial.  Second Amended Complaint ¶ 39a.[10]  These plaintiffs argue that their waivers of the right to a jury trial were not knowing and intelligent because were not apprized of the possibility of losing their right to possess a firearm if they were convicted.  *See* 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb) (stating that a person shall not be considered to have been considered to be convicted of a misdemeanor crime of domestic violence "unless the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.").

As an initial matter, plaintiffs cite no authority for the proposition that, in a civil proceeding brought under 18 U.S.C. § 925A (as opposed to criminal prosecution under 18 U.S.C. § 922(g)(9)), the Court would have jurisdiction to determine that an individual's waiver of his or her right to a jury trial that was made in a state criminal proceeding was not knowing and intelligent.  In any event, plaintiffs' argument lacks merit.  When a person enters a guilty or no contest plea, he or she must be advised of all direct consequences of the conviction.  *Bunnell v. Superior Court*, 13 Cal. 3d 592, 605 (1975).  This requirements relates to the primary and direct consequences involved in the criminal case itself and not to secondary, indirect or collateral consequences.  *People v. Arnold*, Cal. 4th 294, 309 (2004).  Direct consequences of a guilty plea include the statutory range of punishment for the conviction, probation ineligibility, and a required term of parole.  *Bunnell*, 113 Cal. 3d at 605.  "A collateral consequence is one which does not 'inexorably follow' from a conviction of the offense involved in the plea." *People v. Crosby*, 5 Cal. Rptr. 2d 159, 160 (Cal .Ct. App. 1992).  "The 'possible future use of a current conviction is not a direct consequences of the conviction.'" *People v. Gurule*, 28 Cal. 4th 557, 634

---

[10]  In their Motion for Summary Judgment, plaintiffs attempt to add plaintiff Edward Erikson to the list of plaintiffs who allege that they did not make knowing and intelligent waivers of their right to a jury trial.  *See* Motion for Summary Judgment at 12.  However, Erikson was not included in this claim in the Second Amended Complaint.  Second Amended Complaint ¶ 39a.

(2002) (quoting *People v. Bernal*, 27 Cal. Rptr. 2d 839, 840 (Cal. Ct. App. 1994)).  "If a consequence is only collateral, no advisement is required." *Id.*

Plaintiffs acknowledge that, at the time of their pleas, individuals with convictions for misdemeanor crimes of domestic violence were not prohibited from possessing firearms and that 18 U.S.C. § 922(g)(9) was enacted in 1996 as part of the Omnibus Consolidated Appropriations Act of 1997 – years after their convictions.  *See* Plaintiffs' Motion for Summary Judgment at 12. Accordingly, plaintiffs cannot reasonably argue that they were not apprized of a direct consequence of their conviction – the law obviously does not require defendants to be apprized of future unanticipated changes in the law.[11]

Plaintiffs' reliance on *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473 (2010), is entirely misplaced.  In *Padilla*, the Supreme Court held that a criminal defendant's attorney had an obligation to advise his client that the offense to which he was pleading guilty would result in his removal from the country, stating that "deportation is an integral part – indeed, sometimes the most important part – of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* at 1480; *id.* at 1483 ("Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.").  *Padilla* provides no support for plaintiffs' argument that a defendant must be advised of a future change in the law that was not anticipated at the time of his guilty plea.  Moreover, plaintiffs make no attempt to explain how the loss of the ability to possess firearms can or should be equated to deportation, which the Supreme Court reiterated was "the equivalent of banishment or exile." *Padilla*, 130 S. Ct. at 1481 ("The severity of deportation – 'the equivalent of banishment or exile – only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation.") (internal citation omitted).

**B.    Plaintiffs' Second Amendment Challenge to 18 U.S.C. § 922(g)(9) Is Merit less**

In their Second Amended Complaint, Plaintiffs claim that 18 U.S.C. § 922(g)(9) violates the Second Amendment.  This claim lacks merit.

---

[11]  Plaintiffs do not argue, nor could they, that under cases such as *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) and *United States v. St. Cyr*, 533 U.S. 289 (2001), 18 U.S.C. § 922(g)(9) may not be applied to them retroactively.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**1.    It Is Not Clear That Plaintiffs Are Pursuing Their Second Amendment Challenge**

As an initial matter, it is not entirely clear that plaintiffs are actually pursuing their Second Amendment challenge to 18 U.S.C. § 922(g)(9).  In their motion for summary judgment, plaintiffs state:

> This is <u>not</u> a direct Second Amendment challenge to state and federal efforts to control the acquisition and possession of deadly weapons by persons convicted of misdemeanor crimes of domestic violence (MCDV).  Plaintiffs herein concede, for purposes of this motion, that California and the Federal government have the power to suspend an MCDV misdemeanant's 'right to keep and bear arms' as a collateral consequence of conviction.

Plaintiffs' Motion for Summary Judgment at 2.

Plaintiffs also devote only one page of their motion for summary judgment  to their Second Amendment challenge.  *See* Plaintiffs' Motion for Summary Judgment at 13-14.  Although defendants believe that plaintiffs have effectively abandoned their Second Amendment claim, they nonetheless address the claim below in an abundance of caution.

**2.    *District of Columbia v. Heller*, 554 U.S. 570 (2008)**

The Second Amendment to the United States Constitution provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. Amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court concluded that the Second Amendment protects an individual right of "law-abiding, responsible citizens to use arms in defense of hearth and home."  *Id.* at 635.  The Court based this conclusion on an extensive analysis of the Amendment's text.  In addition, because the Second Amendment has always been understood to codify "a *pre-existing* right," *id.* at 592 (emphasis added), *Heller* also considered the historical background of the right to keep and bear arms in England and the American colonies.

*Heller* then held unconstitutional two District of Columbia statutes to the extent they totally banned handgun possession in the home and required all other firearms within the home to be kept inoperable.  *Id.* at 634-35.  The Supreme Court "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions," *id.* at 634, concluding that "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights," the District of Columbia's handgun ban "would fail constitutional muster."  *Id.* at 628-29.  In a footnote, however, the Court rejected the notion

that rational basis scrutiny was appropriate, concluding that this test "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right . . . ." *Id.* at 628 n.27.  The Court also rejected an "interest-balancing" test proposed by Justice Breyer in dissent. *Id.* at 687-91.

At the same time, however, the Court made clear that "the right secured by the Second Amendment is not unlimited," *id.* at 626, and identified several "exceptions," *id.* at 635, which it characterized as "permissible" "regulations of the right[.]"  The Court declared:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626-27 (emphasis added).  The Court further cautioned that "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Heller*, 554 U.S. at 627 n.26.

### 3.    Second Amendment Challenges to 18 U.S.C. § 922(g)(1) – An Analogous Statute

Following *Heller*, the Ninth Circuit has concluded that 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms, does not violate the Second Amendment.  *See United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 294 (2010).  The Ninth Circuit concluded that § 922(g)(1) falls within *Heller*'s list of presumptively lawful regulatory measures and does not require any further constitutional scrutiny.  The Ninth Circuit stated:

> Vongxay cites no authority holding that 18 U.S.C. § 922(g)(1) violates the Second Amendment, but asserts that *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L.Ed.2d 637 (2008), requires that conclusion.  He is mistaken.  Nothing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1).

> . . . . The Court [in *Heller*] explained how such a disqualification could occur, stating:

>> . . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, *nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

> *Heller*, 128 S. Ct. at 2816-2817 (emphasis added) (internal citation omitted).  The Court further noted that "[w]e identify these *presumptively lawful regulatory measures* only as examples; our list does not purport to be exhaustive." *Heller*, 128 S. Ct. at 2817, n. 26 (emphasis added).  Thus, felons are categorically different from the individuals who

have a fundamental right to bear arms, and Vongxay's reliance on *Heller* is misplaced. *Vongxay*, 594 F.3d at 1114-15 (footnote omitted).

Every other circuit that has addressed a Second Amendment challenge to 18 U.S.C. § 922(g)(1) on the merits has rejected the challenge. *See United States v. Rozier*, 598 F.3d 768, 771 (11th Cir.), *cert. denied*, 130 S. Ct. 3399 ( 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010); *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011); *United States v. Williams*, 616 F.3d 685, 692-94 (7th Cir.), *cert. denied*, ___ U.S. ___, 131 S. Ct. 805 (2010); *United States v. Khami*, 2010 WL 273134, at *6-7 (6th Cir. Jan. 26, 2010), *cert. denied*, 130 S. Ct. 3345 (2010); *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009), *cert. denied*, 129 S. Ct. 2814 (2009); *United States v. Barton*, 633 F.3d 168, 172-75 (3d Cir. 2011); *United States v. Torres–Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) ("All of the circuits to face the issue post *Heller* have rejected blanket challenges to felon in possession laws.").

### 4.    18 U.S.C. § 922(g)(9) Falls Within *Heller*'s List of Presumptively Lawful Prohibitions On The Right To Bear Arms

Like 18 U.S.C. § 922(g)(1), the statutory prohibition against the possession of firearms by persons convicted of a misdemeanor crime of domestic violence warrants inclusion on *Heller*'s list of presumptively lawful prohibitions on the right to bear arms. *See, e.g., United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010) ("We now explicitly hold that § 922(g)(9) is a presumptively lawful "longstanding prohibition on the possession of firearms.'""); *In re United States*, 578 F.3d 1195 (10th Cir. 2009) (order) ("Nothing suggests that the *Heller* dictum, which we must follow, is not inclusive of § 922(g)(9) involving those convicted of misdemeanor domestic violence."); *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011) ("Indeed, § 922(g)(9) fits comfortably among the categories of regulations that Heller suggested would be 'presumptively lawful.'"); *United States v. Smith*, 742 F. Supp. 2d 855, 863 (S.D. W. Va. 2010) ("Therefore, § 922(g)(9) should be considered presumptively l awful, and it is the opinion of this Court that the statute may be upheld on that basis alone.").

Section 922(g)(9) prohibits firearms possession by persons who have been convicted of a "misdemeanor crime of domestic violence."  The statute serves a vital role because, as the Supreme Court has observed, "[f]irearms and domestic strife are a potentially deadly combination nationwide." *United States v. Hayes*, 555 U.S. 415, ___, 129 S. Ct. 1079, 2087 (2009).  In *Hayes*, the Supreme Court

explained why 18 U.S.C. § 922(g)(9) was enacted:

> Existing felon-in-possession laws, Congress recognized, were not keeping firearms out of the hands of domestic abusers, because "many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies."  142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg).  By extending the federal firearm prohibition to persons convicted of "misdemeanor crime[s] of domestic violence," proponents of § 922(g)(9) sought to "close this dangerous loophole."  *Id.*, at 22986.

> Construing § 922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress' manifest purpose.  Firearms and domestic strife are a potentially deadly combination nationwide.

*Hayes*, 129 S. Ct. at 1087; *see also United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (en banc) ("The belief underpinning § 922(g)(9) is that people who have been convicted of violence once – toward a spouse, child, or domestic partner, no less – are likely to use violence again.").

Because § 922(g)(9) disarms people who have been convicted of violent criminal conduct, the statute is "presumptively lawful" under the reasoning of *Heller*.  This conclusion follows from *Heller*'s inclusion of laws prohibiting firearms possession on its list of "permissible" regulations.  This portion of *Heller* explicitly recognized that persons may forfeit their Second Amendment right to bear arms along with other rights when they commit serious crimes.  *Heller* made it clear that its list of Second Amendment "exceptions" provided only "examples" of "presumptively lawful" regulations, and warned lower courts not to view these examples as "exclusive."  *Id.* at 627 n. 26.  There is no difference between § 922(g)(9) and § 922(g)(1) for purposes of Second Amendment Analysis.  Although more recently enacted than § 922(g)(1), § 922(g)(9) "addresses the thorny problem of domestic violence," which "Congress recognized was not remedied by 'longstanding' felon-in-possession laws."  *White*, 593 F.3d at 1205-06.  More importantly, the case for deeming § 922(g)(9) "presumptively lawful" is compelling because a person convicted under that statute must "have first acted violently toward a family member or domestic partner."  *Id.*  "The public interest in a prohibition on firearms possession is at its apex in circumstances . . . where a statute disarms persons who have proven unable to control violent criminal impulses."  *People v. Flores*, 86 Cal. Rptr. 3d 804, 807 (Cal. Ct. App. 2008).  Section 922(g)(1), by comparison, "does not distinguish between the violent and non-violent offender."  *White*, 593 F.3d at 1206; *Booker*, 644 F.3d at 4 ("Moreover, in covering only those with a record of violent crime, § 922(g)(9) is arguably more consistent with historical regulation of

firearms than § 922(g)(1), which extends to violent and nonviolent offenders alike."). Accordingly, "as a predictor of firearm misuse, the definitional net cast by § 922(g)(9) is tighter than the net cast by § 922(g)(1)." *United States v. Booker*, 570 F. Supp. 2d 161, 164 (D. Me. 2008), *aff'd*, 644 F.3d 12 (1st Cir. 2011). The Court should therefore extend the "presumption" of lawfulness that *Heller* conferred upon Section 922(g)(1) to Section 922(g)(9).

### 5.    18 U.S.C. § 922(g)(9) Withstands Intermediate Scrutiny

As discussed above, the statutory prohibition against the possession of firearms by persons convicted of a misdemeanor crime of domestic violence warrants inclusion on *Heller*'s list of presumptively lawful prohibitions on the right to bear arms, and no further constitutional scrutiny is required. However, assuming for purposes of argument that 18 U.S.C. § 922(g)(9) must withstand intermediate scrutiny, the statute is substantially related to an important governmental interest. *See, e.g., United States v. Booker*, 644 F.3d 12 (1st Cir. 2011) (concluding that § 922(g)(9) withstands intermediate scrutiny); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc) (same); *Ross v. Fed. Bureau of Alcohol, Tobacco, and Firearms*, ___ F. Supp. 2d ___, 2011 WL 3439412, at *7-8 (Aug. 4, 2011 D. Md. 2011) (same); *United States v. Smith*, 742 F. Supp. 2d 855, 870 (S.D.W. Va. 2010) (same); *United States v. Tooley*, 717 F. Supp. 2d 580, 598 (S.D.W. Va. 2010) (same); *United States v. Brown*, 715 F. Supp. 2d 688, 698 (E.D. Va. 2010) (same); *United States v. Walker*, 709 F. Supp. 2d 460, 467 (E.D. Va. 2010) (same).

a.    Strict Scrutiny Should Not Be Applied

Although it is not entirely clear from their motion for summary judgment, plaintiffs appear to argue that this Court should apply strict scrutiny to 18 U.S.C. § 922(g)(9). *See* Plaintiffs' Motion for Summary Judgment at 13 ("If the Court is required to pursue that analysis, it should apply (almost) strict scrutiny and require the government to bear the burden of producing evidence that forbidding misdemeanants with a 10-year history of law-abiding citizenship from exercising Second Amendment rights serves a compelling government interest, and that the means used (a complete lifetime ban on exercising the right) is necessary to achieve that interest.").

The argument that strict scrutiny should be applied to the statute has been rejected by every federal court that has considered the question. In *Chester v. United States*, 628 F.3d 673 (4th Cir. 2010)

1 for example – a case for some reason cited by plaintiffs in support of their argument that strict scrutiny

2 should apply – the Fourth Circuit "held that strict scrutiny did not apply because Chester's criminal

3 history as a domestic violence misdemeanant took him outside the core right of the Second

4 Amendment identified in *Heller*, which is the right of a law-abiding responsible citizen to possess and

5 carry a weapon for self-defense." *United States v. Staten*, ___ F.3d __, 2011 WL 6016976, at *3 n.3

6 (4th Cir. Dec. 5, 2011) (quoting *Chester*, 628 F.3d at 682). In *United States v. Booker*, 644 F.3d 12 (1st

7 Cir. 2011), the First Circuit rejected strict scrutiny analysis and stated: "We think it sufficient to

8 conclude, as did the Seventh Circuit, that a categorical ban on gun ownership by a class of individuals

9 must be supported by some form of 'strong showing,' necessitating a substantial relationship between

10 the restriction and an important governmental objective." *Id.* at 25 (citing *Skoien*, 614 F.3d at 641).

     b.    18 U.S.C. § 922(g)(9) Passes Muster Under Intermediate Scrutiny

12        To pass constitutional muster under intermediate scrutiny, the government must typically

13 establish that the challenged law is substantially related to an important governmental interest. *See,*

14 *e.g,, Clark v. Jeter*, 486 U.S. 456, 461 (1988). Here, it cannot be disputed that the goal of § 922(g)(9),

15 which is to prevent armed violence, is an important governmental interest. Congress's interest in

16 protecting "the safety and indeed the lives of its citizens" is not merely "substantial" but "compelling."

17 *United States v. Salerno*, 481 U.S. 739, 750 (1987). In *Skoien*, the Seventh Circuit stated that "no one

18 doubts that the goal of § 922(g)(9), preventing armed mayhem, is an important governmental

19 objective." *Skoien*, 614 F.3d at 642. In *Booker*, the First Circuit explained:

> Section 922(g)(9) finds its animating interest in keeping guns away from people who
> have been proven to engage in violence with those with whom they share a domestically
> intimate or familial relationship, or who live with them or the like. This interest, which
> appears plainly on the face of the statute and is borne out by its legislative history, *see*
> 142 Cong. Rec. S8832 (statement of Sen. Lautenberg), is undeniably important. *See*
> *Skoien*, 614 F.3d at 642 ("[N]o one doubts that the goal of § 922(g)(9), preventing
> mayhem, is an important governmental objective."); *cf. Carey v. Brown*, 447 U.S. 455,
> 271, 100 S. Ct. 2286, 65 L.Ed.2d 263 (1980) ("The State's interest in protecting the
> well-being, tranquility, and privacy of the home is certainly of the highest order in a free
> and civilized society.").

25 *Booker*, 644 F.3d at 25; *see also United States v. Hayes*, 555 U.S. 415, 426 (2009) (noting that the

26 legislative history underlying 18 U.S.C. § 922(g)(9) demonstrates that the statute was enacted in

27 response to Congress' effort to close a loophole – that existing felon-in-possession laws were not

28 keeping firearms out of the hands of domestic abusers because many people who engage in serious

spousal abuse were not charged with or convicted of felonies).

Moreover, keeping firearms out of the hands of domestic abusers is substantially related to that important governmental interest. *See, e.g., Booker*, 644 F.3d at 25 ("Nor can there be any question that there is a substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home."). First, the magnitude of domestic violence is staggering. One out of three women (32.9%) has experienced physical violence by an inmate partner. *See* National Center for Injury Prevention and Control of the Centers for Disease Control, *National Intimate Partner and Sexual Violence Survey, 2010 Summary Report* at 39; see also Bureau of Justice Statistics, *Female Victims of Violence at 1-2* (Revised 10/23/09). Approximately 1 in 4 women in the United States (24.3%) has experienced severe physical violence by an inmate partner in her lifetime, translating to nearly 29 million women. *Id.* at 43. "An estimated 17.2% of women have been slammed against something by a partner, 14.2% have been hit with a fist or something hard, and 11.2% reported that they have been beaten by an intimate partner in their lifetime." *Id.* at 43. Nearly 1 out of 5 murder victims (16.3%) were killed by an intimate. *See* United States Department of Justice, Bureau of Justice Statistics, *Homicide Trends in the United States, 1980-2000, Annual Rates for 2009 and 2010*, at 18 (Nov. 2011). 2 out of 5 female murder victims were killed by an intimate. *See id.* Female murder victims (41.5%) were almost 6 times more likely than male murder victims (7.1%) to have been killed by an intimate. *See id.* at 10.

Second, as recognized by the Supreme Court, "[f]irearms and domestic strife are a potentially deadly combination nationwide." *Hayes*, 555 U.S. at 427. From 1980 through 2008, over two–thirds of victims murdered by a spouse or an ex-spouse were killed by guns. *See* United States Department of Justice, Bureau of Justice Statistics, *Homicide Trends in the United States, 1980-2000, Annual Rates for 2009 and 2010*, at 20 (Nov. 2011). In 2008, 53% of female intimate homicide victims were killed with guns while 41% were killed with other weapons. *See id.* "Domestic assaults with firearms are approximately twelve times more likely to end in the victim's death than are assaults by knives or fists." *Skoien*, 614 F.3d at 643 (citing Linda E. Salzman, James A. Mercy, Patrick W. O'Carroll, Mark L. Rosenberg & Philip H. Rhodes, *Weapon Involvement and Injury Outcomes in Family and Intimate Assaults*, 267 J. Am. Medical Ass'n 3043 (1992)). Between 2000 and 2008, approximately 60% of

homicides resulting from arguments involved guns.  *See* United States Department of Justice, Bureau of Justice Statistics, *Homicide Trends in the United States, 1980-2000, Annual Rates for 2009 and 2010*, at 26.  As stated by the Seventh Circuit, "[t]he presence of a gun in the home of a convicted domestic abuser 'is strongly and independently associated with an increased risk of homicide." *Skoien*, 614 F.3d at 643-44 (citing Arthur L. Kellermann, et al., *Gun Ownership as a Risk Factor for Homicide in the Home*, 329 New England J. Medicine 1084, 1087 (1993)).

Third, a large body of evidence verifies domestic violence recidivism.  As explained in *Skoien*, "the recidivism rate is high, implying that there are substantial benefits in keeping the most deadly weapons out of the hands of domestic abusers."  *Id.* at 644; *see also id.* at 642 ("The belief underpinning § 922(g)(9) is that people who have been convicted of violence once – toward a spouse, child, or domestic partner, no less – are likely to use violence again.").  "Domestic violence misdemeanants, even more so than most convicted felons, have demonstrated a specific propensity for violence and thus pose an[] unacceptable risk of firearm misuse."  *United States v. Chester*, 628 F.3d 673, 691 (4th Cir. 2010) (Davis, J., concurring).  In one study conducted of 3,662 suspects arrested for misdemeanor domestic violence in Cincinnati, Ohio, 17% were re-arrested for domestic violence during the three-year study period alone.  United States Department of Justice, *Reconsidering Domestic Violence Recidivism: Individual and Contextual Effects of Court Dispositions and Stake in Conformity*, 6 (2001); *Tooley*, 717 F. Supp. 2d at 595.  These, of course, were only the repeat incidents that resulted in a recorded arrest, and many such events are never reported at all.  *See Tooley*, 717 F. Supp. 2d at 595; J.C. Babcock, et al., *Does Batterers' Treatment Work?  A Meta-Analytic Review of Domestic Violence Treatment*, 23 Clinical Psychology Review 1023, 1039 (2004) (a disparity between "20% [reporting domestic violence recidivism] based on police reports and 35% based on partner reports.").

In sum, even if § 922(g)(9) must withstand intermediate scrutiny, it substantially promotes an important governmental interest in preventing domestic gun violence.

## 6.   Plaintiffs' "Lifetime Ban" Argument Fails

Plaintiffs allege that § 922(g)(9) violates the Second Amendment because it imposes a "lifetime ban" on the right to keep and bear arms.  Second Amended Complaint ¶ 46.  This claim fails.  The Seventh Circuit addressed the same "lifetime ban" argument as follows:

By the time this appeal reached oral argument *en banc*, Skoien's principal argument had shifted. Instead of denying the logical and empirical basis of § 922(g)(9), he contended that Congress overreached by creating a "perpetual" disqualification for persons convicted of domestic violence. . . .

Although the statute provides that expungement, pardon, or restoration of civil rights means that a conviction no longer disqualifies a person from possessing firearms, *see* 18 U.S.C. § 921(a)(33)(B)(ii), Skoien maintains that, as a practical matter, these routes to restoration are unavailable to domestic-battery misdemeanants in Wisconsin. We have our doubts. As the Supreme Court observed in *Logan v. United States*, 552 U.S. 23, 128 S. Ct. 475, 169 L.Ed.2d 432 (2007), although Wisconsin does not deprive misdemeanants of the civil rights to vote, serve on a jury, or hold public office – so these rights cannot be "restored" by the passage of time, as felons' rights often are – the state does give misdemeanants an opportunity to seek pardon or expungement. Some of the largest states make expungement available as of right to misdemeanants who have a clean record for a specified time. California, for example, has such a program. Cal. Penal Code § 1203.4a. *See also* Robert A. Mikos, *Enforcing State Law in Congress's Shadow*, 90 Cornell L. Rev. 1411, 1463-64 & nn. 187, 188 (2005) (finding that expungement increases following enactment of § 922(g)(9)). This means that § 922(g)(9) in its normal application does not create a perpetual and unjustified disqualification for a person who no longer is apt to attack other members of the household.

*Skoien*, 614 F.3d at 644-45.

Similarly, in *United States v. Smith*, 742 F. Supp. 2d 855 (S.D.W. Va. 2010), the district court addressed the "lifetime ban" argument as follows:

It is clear from the federal law that the majority of domestic violence offenders will not regain their firearms possession right. However, there are procedures for the restoration of the right. Namely, 18 U.S.C. § 921(a)(33)(B)(ii) excepts from the firearms ban individuals whose domestic violence convictions have been expunged, set aside, pardoned, or whose civil rights have been otherwise restored. There is, therefore, a mechanism whereby domestic violence misdemeanants can regain their right to lawfully keep and bear arms. It is up to state legislatures to constrict or expand the ease with which convicted misdemeanants may apply for and receive relief under these measures.

Even assuming Defendant is permanently banned from future firearm possession, the Court finds § 922(g)(9) reasonably tailored to accomplish the Government's compelling interest. Domestic violence misdemeanants are, by statutory definition, violent criminals. *See* 18 U.S.C. § 921(a)(33)(A)(I). In Congress's judgment and as demonstrated by social scientists, domestic violence misdemeanants are prone to repeated acts of intrafamily violence. Past domestic violence is an indicator of future crimes of violence, and Congress legislated with that trend in mind.

*Smith*, 742 F. Supp. 2d at 869; *see also Tooley*, 717 F. Supp. 2d at 596 ("While the majority of domestic violence offenders may not regain their right to legally possess a firearm, the statute does contain procedures for the restoration of the right. In this sense, it cannot be considered a blanket permanent ban."); *Tooley*, 717 F. Supp. 2d at 597 ("While limiting the deprivation of a Second Amendment right under § 922(g)(9) to a specific time period would more narrowly tailor the statute, it

would also significantly lessen its effectiveness in furthering the Congressional purpose of preventing and reducing the severity of domestic violence." ).

Here, while plaintiffs cannot establish that their civil rights have been restored, they offer no explanation whatsoever why expungement, set aside and pardon are necessarily unavailable and why, consequently, § 922(g)(9) necessarily poses a "lifetime ban."  Moreover, as stated *Tooley*, while limiting § 922(g)(9) to a specific time period would more narrowly tailor the statute, it would also significantly lessen its effectiveness in furthering the Congressional purpose of preventing and reducing the severity of domestic violence.

Although plaintiffs also appear to raise an "as-applied" challenge to the "lifetime ban" on firearms possession imposed by § 922(g)(9), "[t]o raise a successful as-applied challenge, [a plaintiff] must present facts about himself and his background that distinguish his circumstances and his background that distinguish his circumstances from those of persons historically barred from Second Amended protections."  *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011).  In this case, plaintiffs have failed to allege any facts about themselves and their backgrounds that distinguish their circumstances from other domestic violence misdemeanants who face the firearm prohibition under § 922(g)(9).  While plaintiffs appear to suggest that their convictions are "minor" in comparison to those of individuals typically barred from possessing firearms under § 922(g)(9), *see* Second Amended Complaint ¶ 47, the plaintiffs' victims would presumably disagree strongly with the plaintiffs' characterization of their crimes as "minor."  *See Smith*, 742 F. Supp. 2d at 869 ("Domestic violence misdemeanants are, by statutory definition, violent criminals").

**C.      Plaintiffs Lack Standing To Challenge The Constitutionality of 18 U.S.C. § 922(d)(9)**

Plaintiffs appear to have properly abandoned their challenge to the constitutionality of 18 U.S.C. § 922(d)(9) by failing to address this issue in their motion for summary judgment.  In any event, plaintiffs lack standing to challenge that statute because they fail to allege anywhere in their Second Amended Complaint that they intend to sell or otherwise dispose of any firearms.  *See Darring v. Kincheloe*, 783 F.2d 874, 877 (9th Cir. 1986) (stating that "[t]he federal courts have historically been reluctant to recognize third-party standing.").

1

## VI.  CONCLUSION

2   For the foregoing reasons, the defendants respectfully ask the Court to deny plaintiffs' motion

3   for summary judgment and to grant summary judgment in favor of defendants.

4

5   Dated:   January 11, 2012          BENJAMIN B. WAGNER
                                        UNITED STATES ATTORNEY
6
                                        */s/ Edward A. Olsen*
7                                       EDWARD A. OLSEN
                                        Assistant United States Attorney
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28