BENJAMIN B. WAGNER
United States Attorney
EDWARD A. OLSEN, CSBN 214150
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2821
Facsimile:  (916) 554-2900
Email: edward.olsen@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON, VERNON NEWMAN,<br><br>Plaintiffs,<br><br>v.<br><br>ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation,<br><br>Defendants. | CASE NO.  2:10-CV-02911-JAM-EFB<br><br>**DEFENDANTS' REPLY BRIEF**<br><br>Date:      January 25, 2012<br>Time:     1:30 p.m.<br>Place:     Courtroom 6, 14th Floor<br>Judge:    John A. Mendez |

## I.  INTRODUCTION

Defendants Eric Holder and Robert Mueller hereby submit their Reply to plaintiffs' Opposition to defendants' Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P.12(b)(1) and 12(b)(6).

## II.  DISCUSSION

**A.     Plaintiffs' Claims For Declaratory Relief Under 18 U.S.C. § 925A**

**1.      18 U.S.C. § 925A**

In their Opposition to the Motion to Dismiss, plaintiffs dispute the fact that the only proper defendant in their claims brought under 18 U.S.C. § 925A is the United States.  They argue that because Eric Holder and Robert Mueller are "responsible for denying the transfer," these individuals

DEFENDANTS' REPLY BRIEF
-1-

are the proper defendants. Plaintiffs' Opposition at 8-9. Plaintiffs simply misread the statute.

18 U.S.C. § 925A provides as follows:

Any person denied a firearm pursuant to subsections (s) or (t) of section 922 --

(1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or

(2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,

may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

18 U.S.C. § 925A.

The statute allows an individual who is denied a firearm purchase to bring an action against either: (1) the State or political subdivision responsible for providing erroneous information to the NICS unit or responsible for denying the transfer, or (2) the United States. The plain and unambiguous language of the statute does not permit an action against an employee or officer of the United States.

### 2.  Plaintiffs Have Not Had Their "Civil Rights Restored"

In their Opposition, plaintiffs argue they have had their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii) because "California Penal Code § 12021(c)(1) [29805] restores – without qualification – the Plaintiffs 'right to keep and bear arms' once 10 years have lapsed following their conviction for a California MCDV." Opposition at 12.

The Ninth Circuit's rejected a similar argument in *United States v. Brailey*, 408 F.3d 609 (9th Cir. 2005). There, the plaintiff was convicted of a misdemeanor crime of domestic violence, but he argued that he came within the exception to 18 U.S.C. § 922(g)(9) for persons who have had their "civil rights restored" within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii). *See id.* at 610. He claimed that his civil rights had been restored because a Utah statute, as amended in 2000, provided that persons convicted of misdemeanors are no longer prevented from possessing firearms under Utah state law. *See id.* at 610-11. The Ninth Circuit rejected this claim, holding that "[b]ecause Brailey's misdemeanor conviction did not remove Brailey's core civil rights of voting, serving as a juror, or

holding public office, his civil rights have not been 'restored' within the meaning of federal law by Utah's 2000 amendment permitting him to possess a firearm." *Id.* at 613; *see also United States v. Leuschen*, 395 F.3d 155, 160 (3d Cir. 2005) ("If the defendant has not 'had civil rights restored,' it simply does not matter what the state law provides concerning possession of firearms.").

Although plaintiffs point out that *Brailey* was decided prior to *District of Columbia v. Heller*, 554 U.S. 570 (2008), this fact is inconsequential for three reasons.  First, although the Supreme Court in *Heller* recognized an individual right to bear arms, this right is not among the cluster of "citizen" rights that states extend to individuals by virtue of citizenship within their borders – the right to vote, the right to hold elective office, and the right to sit on a jury.  *See United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir. 1990) ("The fact that Congress used the term 'civil rights,' as opposed to 'all rights and privileges,' as the government would have us interpret the statute, indicates that Congress intended to encompass those rights accorded to an individual by virtue of his citizenship in a particular state. These rights include the right to vote, the right to seek and hold public office and the right to serve on a jury."); *McGrath v. United States*, 60 F.3d 1005, 1007 (2d Cir. 1995) ("The parties agree that the pertinent civil rights in question are those which most states extend by virtue of citizenship within their borders: (i) the right to vote; (ii) the right to hold elective office; and (iii) the right to sit on a jury."); *see also United States v. Andaverde*, 64 F.3d 1305, 1309 (9th Cir. 1995) ("In determining whether a felon continues to suffer a civil rights disability, the Ninth Circuit considers whether the felon has been restored the right to vote, sit on a jury, and hold public office."); *United States v. Skoien*, 614 F.3d 638, 644-45 (7th Cir. 2010) (en banc) (a post-*Heller* opinion in which the court discusses the "civil rights" under § 921(a)(33)(B)(ii) as the civil rights to vote, serve on a jury, and hold public office); *Nat'l Ass'n of Gov't Emps., Inc. v. Barrett*, 968 F. Supp. 1564, 1574 n.4 (N.D. Ga. 1997) ("Civil rights are described by most courts as the rights to vote, to serve on a jury, and to hold public office.").[1]

Second, § 921(a)(33)(B)(ii) refers to "civil rights" in the plural.  *See United States v. Keeney*, 241 F.3d 1040, 1044 (8th Cir. 2001) ("Significantly, § 921(a)(20) and § 921(a)(33)(B)(ii) both refer to

---

[1] In examining 18 U.S.C. § 921(a)(20) (the parallel statute to 18 U.S.C. § 921(a)(33)(B)(ii) for felons), the Supreme Court stated: "While § 921(a)(20) does not define the term 'civil rights,' courts have held, and petitioner agrees, that the civil rights relevant under the above-quoted provision are the rights to vote, hold office, and serve on a jury." *Logan v. United States*, 552 U.S. 23, 28 (1997).

civil rights in the plural, thus suggesting that Congress intended to include a cluster of rights, as referenced in *McGrath*, within the meaning of the term "civil rights" as contained in these provisions."); *see also United States v. Meeks*, 987 F.2d 575, 578 (9th Cir. 1993) (holding that an individual whose rights to vote and hold office had been restored, but not his right to serve on a jury, had not had his "civil rights restored."); *United States v. Valerio*, 441 F.3d 837, 843 (9th Cir. 2006) (noting that the individual's right to vote and right to possess firearms had been restored, but holding "that is not enough."); *United States v. Essig*, 10 F.3d 968, 975 (3d Cir. 1993) (rejecting argument that the restoration of two of three core civil rights constitutes the restoration of civil rights for purposes of 18 U.S.C. § 921(a)(20)); *United States v. Thompson*, 2011 WL 4101537 (M.D. Ala. Sept. 14, 2011) ("Upon a review of the authorities which have addressed the issue, it appears that there is no court which has concluded that "has had civil rights restored" is satisfied when a defendant has forfeited the rights to vote, hold public office, and to serve on a jury, and only one of those rights is restored."). Here, even assuming for purposes of argument that the right to keep and bear arms is a "civil right" within the meaning of § 921(a)(33)(B)(ii), the restoration of a single right does not rise to the level of a restoration of "civil rights" within the plain language of § 921(a)(33)(B)(ii).[2]

Third, plaintiffs have also failed to explain how Congress, in drafting 18 U.S.C. § 921(a)(33)(B)(ii) in 1996, could have intended the term "civil rights" in 18 U.S.C. § 921(a)(33)(B)(ii)

---

[2] Although plaintiffs claim that the Supreme Court in *Heller* and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) recognized "rights" secured by the Second Amendment, they do not cite any particular reference in either of those opinions to support their notion that Second Amendment consists of multiple rights, as opposed to a unitary right. Opposition at 11 (discussing "the rights secured by the Second Amendment as individual, fundamental rights"). In each of those opinions the Supreme Court consistently refers to the "right to keep and bear arms" in the singular. *See Heller*, 554 U.S. at 595 ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."); *id.* at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited."); *McDonald*, 130 S. Ct. at 3026 ("Applying the standard that is well established in our case law, we hold that the Second Amendment right is fully applicable to the States."); U.S. Const. Amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.").U.S. Const. Amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."). Plaintiffs have also not articulated what "bundle of rights" are "inherent in the "right to keep and bear arms." Opposition at 12 ("California made the public policy decision – at least three years before the U.S. Congress – to impose a revocation of the bundle of rights inherent in the 'right to keep and bear arms' for a person convicted of an MCDV.").

DEFENDANTS' REPLY BRIEF
-4-

to refer to or include an individual's "rights" under the Second Amendment when it was not until *District of Columbia v. Heller*, 554 U.S. 570 (2008), that an individual's right to keep and bear arms was recognized.

Plaintiffs have not cited a single case supporting their argument that the restoration of an individual's right to possess a firearm constitutes a restoration of "civil rights" within the meaning of § 921(a)(33)(B)(ii). Plaintiffs have also failed to cite a single case in support of their argument that *Brailey* and the cases cited above should no longer be followed because they were decided prior to *Heller*.

Plaintiffs also argue that "the case law Defendants rely upon would lead to the obtuse result that felons (having lost the right to vote, sit on a jury and hold public office, along with their "right to keep and bear arms") would qualify for restoration of their rights under any state law rehabilitation procedures – as long as all civil rights are restored under state law without qualification – but those convicted in California of a MCDV (having lost only their "right to keep and bear arms") would still be prohibited persons under federal law because they didn't also lose the right to vote, sit on a jury and hold public office." Opposition at 16. This argument lacks merit. As the Ninth Circuit noted in *Brailey*: "Not all persons convicted of a misdemeanor become prohibited persons; only those convicted of a misdemeanor crime of domestic violence are persons prohibited from possessing guns. Such persons have been found guilty of violent behavior in a domestic setting, and Congress could reasonably conclude that weapons markedly increase the risk of serious injury in such situations." *Brailey*, 408 F.3d at 613. By contrast, 18 U.S.C. § 922(g)(1), which bars convicted felons from possessing firearms, "does not distinguish between the violent and non-violent offender." *White*, 593 F.3d at 1206. Accordingly, the fact that an individual who has been convicted of a misdemeanor crime of domestic violence may not be able to restore his civil rights as readily as an individual who has been convicted of a felony is not "nonsensical" as plaintiffs suggest.

**3. Plaintiffs' Claim That They Were Not Convicted Of Misdemeanor Crimes Of Domestic Violence Because They Did Not Knowingly and Intelligently Waive Their Right To A Jury Trial Lacks Merit**

Plaintiffs Enos, Bastasini, Mercado, Groves, and Monteiro argue that they were not actually convicted of a misdemeanor crime of domestic violence within the meaning of 18 U.S.C. §

DEFENDANTS' REPLY BRIEF                -5-

921(a)(33)(B)(i)(II)(bb) because they did not make knowing and intelligent waivers of their right to a jury trial.  Opposition at 14; Second Amended Complaint ¶¶ 38-40.  These plaintiffs argue that their waivers of the right to a jury trial were not knowing and intelligent because were not apprized of the possibility of losing their right to possess a firearm if they were convicted.  *See* 18 U.S.C. § 921(a)(33)(B)(i)(II)(bb) (stating that a person shall not be considered to have been considered to be convicted of a misdemeanor crime of domestic violence "unless the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.").

As an initial matter, plaintiffs cite no authority for the proposition that, in a civil proceeding brought under 18 U.S.C. § 925A, the Court would have jurisdiction to determine that an individual's waiver of his or her right to a jury trial that was made in a state criminal proceeding was not knowing and intelligent.  In any event, plaintiffs' argument lacks merit.  When a person enters a guilty or no contest plea, he or she must be advised of all direct consequences of the conviction.  *Bunnell v. Superior Court*, 13 Cal. 3d 592, 605 (1975).  This requirement relates to the primary and direct consequences involved in the criminal case itself and not to secondary, indirect or collateral consequences.  *People v. Arnold*, Cal. 4th 294, 309 (2004).  Direct consequences of a guilty plea include the statutory range of punishment for the conviction, probation ineligibility, and a required term of parole.  *Bunnell*, 113 Cal. 3d at 605.  "A collateral consequence is one which does not 'inexorably follow' from a conviction of the offense involved in the plea." *People v. Crosby*, 5 Cal. Rptr. 2d 159, 160 (Cal .Ct. App. 1992).  "The 'possible future use of a current conviction is not a direct consequences of the conviction.'"  *People v. Gurule*, 28 Cal. 4th 557, 634 (2002) (quoting *People v. Bernal*, 27 Cal. Rptr. 2d 839, 840 (Cal. Ct. App. 1994)).  "If a consequence is only collateral, no advisement is required." *Id.*

Plaintiffs acknowledge that, at the time of their pleas, individuals with convictions for misdemeanor crimes of domestic violence were not prohibited from possessing firearms and that 18 U.S.C. § 922(g)(9) was enacted in 1996 as part of the Omnibus Consolidated Appropriations Act of 1997 – years after their convictions.  Accordingly, plaintiffs cannot reasonably argue that they were not apprized of a direct consequence of their conviction – the law obviously does not require defendants to be apprized of future unanticipated changes in the law.

Plaintiffs' reliance on *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473 (2010), is entirely misplaced. In *Padilla*, the Supreme Court held that a criminal defendant's attorney had an obligation to advise his client that the offense to which he was pleading guilty would result in his removal from the country, stating that "deportation is an integral part – indeed, sometimes the most important part – of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* at 1480; *id.* at 1483 ("Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence."). *Padilla* provides no support for plaintiffs' argument that a defendant must be advised of a future change in the law that was not anticipated at the time of his guilty plea. Moreover, plaintiffs make no attempt to explain how the loss of the ability to possess firearms can or should be equated to deportation, which the Supreme Court reiterated was "the equivalent of banishment or exile." *Padilla*, 130 S. Ct. at 1481 ("The severity of deportation – 'the equivalent of banishment or exile – only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation.") (internal citation omitted).

**B.     Plaintiffs' Second Amendment Claim**

    **1.     18 U.S.C. § 922(g)(9) Warrants Inclusion on Heller's List of Presumptively Lawful Prohibitions On The Right To Bear Arms**

In their Opposition, plaintiffs do not appear to respond to the government's argument that, like 18 U.S.C. § 922(g)(1), the statutory prohibition against the possession of firearms by persons convicted of a misdemeanor crime of domestic violence warrants inclusion on *Heller*'s list of presumptively lawful prohibitions on the right to bear arms. *See, e.g., United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010) ("We now explicitly hold that § 922(g)(9) is a presumptively lawful "longstanding prohibition on the possession of firearms.'"); *In re United States*, 578 F.3d 1195 (10th Cir. 2009) (order) ("Nothing suggests that the *Heller* dictum, which we must follow, is not inclusive of § 922(g)(9) involving those convicted of misdemeanor domestic violence."); *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011) ("Indeed, § 922(g)(9) fits comfortably among the categories of regulations that Heller suggested would be 'presumptively lawful.'"); *United States v. Smith*, 742 F. Supp. 2d 855, 863 (S.D. W. Va. 2010) ("Therefore, § 922(g)(9) should be considered presumptively lawful, and it is the opinion of this Court that the statute may be upheld on that basis alone.").

### 2. The Court Should Reject Plaintiffs' Invitation To Apply Strict Scrutiny

In their Opposition, plaintiffs ask the Court to apply "almost" strict scrutiny to 18 U.S.C. § 922(g)(9), although they do not articulate what that level of scrutiny is or where it is derived from. *See* Opposition at 19 ("If the Court is required to pursue the Constitutional analysis of LAUTENBERG'S restoration provisions, it should apply (almost) strict scrutiny and require the government to bear the burden of producing evidence that forbidding misdemeanants with a 10-year history of law-abiding citizenship from exercising SECOND AMENDMENT rights serves a compelling government interest, and that the means used (a complete lifetime ban on exercising the right) is necessary to achieve that interest.").

The argument that strict scrutiny should be applied to § 922(g)(9) has been rejected by every federal court that has considered the question in favor of intermediate scrutiny. In *Chester v. United States*, 628 F.3d 673 (4th Cir. 2010) for example – a case cited by plaintiffs in support of their argument that strict scrutiny should apply – the Fourth Circuit "held that strict scrutiny did not apply because Chester's criminal history as a domestic violence misdemeanant took him outside the core right of the Second Amendment identified in *Heller*, which is the right of a law-abiding responsible citizen to possess and carry a weapon for self-defense." *United States v. Staten*, ___ F.3d __, 2011 WL 6016976, at *3 n.3 (4th Cir. Dec. 5, 2011) (quoting *Chester*, 628 F.3d at 682). In *United States v. Booker*, 644 F.3d 12 (1st Cir. 2011), the First Circuit rejected strict scrutiny analysis and stated: "We think it sufficient to conclude, as did the Seventh Circuit, that a categorical ban on gun ownership by a class of individuals must be supported by some form of 'strong showing,' necessitating a substantial relationship between the restriction and an important governmental objective." *Id.* at 25 (citing *Skoien*, 614 F.3d at 641).

### 3.   18 U.S.C. § 922(g)(9) Passes Muster Under Intermediate Scrutiny

Contrary to plaintiffs' bald assertion that 18 U.S.C. § 922(g)(9) does not withstand constitutional scrutiny, the statute substantially promotes an important governmental interest in preventing domestic gun violence for the reasons explained in the government's motion for summary judgment (at pages 20-25) and its motion to dismiss the Second Amended Complaint. With regard to plaintiffs' claim that the statute imposes a lifetime ban on gun possession for a "minor crime,"

defendants would ask the Court to follow the analysis of the United States District Court for West Virginia in *United States v. Smith*, 742 F. Supp. 2d 855 (S.D.W. Va. 2010).  In *Smith*, the court addressed the potential for a lifetime ban on gun possession under § 922(g)(9) as follows :

> It is clear from the federal law that the majority of domestic violence offenders will not regain their firearms possession right.  However, there are procedures for the restoration of the right.  Namely, 18 U.S.C. § 921(a)(33)(B)(ii) excepts from the firearms ban individuals whose domestic violence convictions have been expunged, set aside, pardoned, or whose civil rights have been otherwise restored.  There is, therefore, a mechanism whereby domestic violence midemeanants can regain their right to lawfully keep and bear arms.  It is up to state legislatures to constrict or expand the ease with which convicted misdemeanants may apply for and receive relief under these measures.
>
> Even assuming Defendant is permanently banned from future firearm possession, the Court finds § 922(g)(9) reasonably tailored to accomplish the Government's compelling interest.  Domestic violence misdemeanants are, by statutory definition, violent criminals.  *See* 18 U.S.C. § 921(a)(33)(A)(I).  In Congress's judgment and as demonstrated by social scientists, domestic violence misdemeanants are prone to repeated acts of intrafamily violence.  Past domestic violence is an indicator of future crimes of violence, and Congress legislated with that trend in mind.

*Smith*, 742 F. Supp. 2d at 869; *see also United States v. Tooley,* 717 F. Supp. 2d 580, 596 (S.D.W. Va. 2010) ("While the majority of domestic violence offenders may not regain their right to legally possess a firearm, the statute does contain procedures for the restoration of the right.  In this sense, it cannot be considered a blanket permanent ban."); *Tooley*, 717 F. Supp.2d at 597 ("While limiting the deprivation of a Second Amendment right under § 922(g)(9) to a specific time period would more narrowly tailor the statute, it would also significantly lessen its effectiveness in furthering the Congressional purpose of preventing and reducing the severity of domestic violence." ).

### III.  CONCLUSION

For the foregoing reasons, the defendants respectfully ask the Court to dismiss the action with prejudice for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated:   January 18, 2012     BENJAMIN B. WAGNER
                              UNITED STATES ATTORNEY

                              */s/ Edward A. Olsen*
                              EDWARD A. OLSEN
                              Assistant United States Attorney