UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD ENOS, JEFF BASTASINI, LOUIE MERCADO, WALTER GROVES, MANUEL MONTEIRO, EDWARD ERIKSON,and VERNON NEWMAN, | ) ) ) ) ) | Case No. 2:10-CV-2911 JAM-EFB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| Plaintiffs, | ) ) ) | |
| v.<br>ERIC HOLDER, as United States Attorney General, and ROBERT MUELLER, III, as Director of the Federal Bureau of Investigation, and UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Defendants' Eric Holder and Robert Mueller, III (collectively "Defendants") Motion to Dismiss (Doc. #32) Plaintiffs' Richard Enos ("Enos"), Jeff Bastasini ("Bastasini"), Louie Mercado ("Mercado"), Walter Groves ("Groves"), Manuel Monteiro ("Monteiro"), Edward Erickson ("Erickson"), and Vernon Newman ("Newman") Second Amended Complaint ("SAC") (Doc. #27). The Motion to Dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The above-named

plaintiffs opposed the motion.  A hearing on the motion to dismiss was held on January 25, 2012.  For the reasons set forth below, the Court GRANTS the motion to dismiss.

## I.   FACTUAL ALLEGATIONS AND SUMMARY OF ARGUMENTS

Plaintiffs, each convicted in California of a misdemeanor crime of domestic violence over ten years ago, allege that they are allowed to possess a firearm under California law but are prohibited from possessing a firearm under federal law. Accordingly, they ask the Court for declaratory relief restoring their right to lawfully possess a firearm under federal law, and challenge the constitutionality of 18 U.S.C. § 922(g)(9), the federal statute which prohibits them from possessing a firearm.

Enos plead no contest to a misdemeanor charge under California Penal Code § 273.5(a) in 1991.  In 1993 the California Legislature amended Penal Code § 12021 and added charges under Penal Code § 273.5(a) to the list of misdemeanors which prohibit a person from acquiring a firearm for ten years after the date of conviction. After ten years, the right to possess a firearm is restored under California Penal Code 12021(c)(1).[1]  In 1996, Congress amended the Violence Against Women Act to include 18 U.S.C. § 922(g)(9), a prohibition against the possession of firearms by misdemeanants convicted of domestic violence.  In 1999, Enos petitioned for and received a record clearance under California Penal Code § 1203.4. He also filed a petition for restoration of civil rights under

---

[1] Effective January 1, 2012, California Penal Code § 12021(c)(1) was repealed and reenacted without substantive change as California Penal Code § 29805. For purposes of clarity, this opinion will continue to refer to the statute as California Penal Code § 12021(c)(1).

1   Penal Code § 12021(c)(3),[2] which was granted by the Honorable Thang

2   N. Barrett.  Accordingly, Enos was permitted to own a firearm by

3   the State of California at that time.  However, when he attempted

4   to purchase a gun in 2004, he was denied the purchase and advised

5   that the denial was being maintained by the U.S. Department of

6   Justice, Federal Bureau of Investigation, and the National Instant

7   Criminal Background Check System (NICS).

8        Bastasini, Mercado, Groves and Monteiro each plead no contest

9   or guilty to a misdemeanor charge under California Penal Code

10  273.5, between 1990-1992.  They later petitioned for and received

11  record clearance under California Penal Code § 1203.4.  They each

12  attempted to purchase a gun in July 2011, and were prohibited from

13  doing so by NICS, after answering "YES" to questions 11.i on ATF

14  Form 4473, which asks if a person has been convicted of a

15  misdemeanor crime of domestic violence.

16       Erickson and Newman were both convicted of misdemeanor crimes

17  of domestic violence, in 1996 and 1997, respectively.  They later

18  petitioned for and received record clearance under California Penal

19  Code § 1203.4.  Edwards and Newman both attempted to purchase

20  firearms in July 2011 and were prohibited from doing so after

21  answering "YES" to question 11.i on ATF Form 4473.

22       Plaintiffs allege that under California law they are permitted

23  to own a firearm, but that they are prohibited from doing so by

24  federal law.  Accordingly, Plaintiffs seek declaratory relief from

25  the Court to restore their right to possess a firearm under federal

26

27  [2] Effective January 1, 2012, California Penal Code § 12021(c)(3)
    was repealed and reenacted without substantive change as California
    Penal Code § 29860.  For purposes of clarity, this opinion will
28  continue to refer to the statute as California Penal Code
    § 12021(c)(3).

law.  The SAC also challenges 18 U.S.C § 922(g)(9) and 18 U.S.C. § 922(d)(9) as unconstitutional under the Second Amendment, both facially and as applied to Plaintiffs.

Defendants' motion to dismiss raised a number of arguments in support of dismissing Plaintiffs' claims, several of which were resolved at the hearing.  The parties reached a stipulation (Doc. #61) that Plaintiffs may add the United States of America as a defendant, to satisfy the requirements of 18 U.S.C. § 925A. Accordingly, "Defendants" in this order includes the United States of America.  Plaintiffs conceded that they no longer seek to maintain their facial challenge to 18 U.S.C. § 922(g)(9), nor their facial and as-applied challenges to 18 U.S.C. § 922(d)(9).[3] Accordingly those allegations are dismissed from the SAC.


II.  OPINION

A.   Legal Standard

1.   Rule 12(b)(1) dismissal

A party may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  When a defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff has the burden of establishing subject matter jurisdiction.  See Rattlesnake Coalition v. United States Envtl. Protection Agency, 509 F.3d 1095, 1102, FN 1 (9th Cir. 2007).

2.   Rule 12(b)(6) Dismissal

A party may move to dismiss an action for failure to state a

---

[3] 18 U.S.C. § 922(d)(9) makes it unlawful for any person to sell a firearm or ammunition to a person who has been convicted of misdemeanor domestic violence.

4

claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Absent prejudice, or a strong showing of any [other relevant] factor[], there exists a presumption under Rule 15(a) in favor of granting leave to amend."  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Id.

   3.   Judicial Notice

Generally, the court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a

1   claim.  There are two exceptions: when material is attached to the

2   complaint or relied on by the complaint, or when the court takes

3   judicial notice of matters of public record, provided the facts are

4   not subject to reasonable dispute.  Sherman v. Stryker Corp., 2009

5   WL 2241664 at *2 (C.D. Cal. Mar. 30, 2009) (internal citations

6   omitted).  Here, Plaintiffs request judicial notice of the stay

7   orders in several Second Amendment cases pending in the Ninth

8   Circuit, as well as the opinion of the First Circuit in a recently

9   decided Second Amendment case.  The Court will take judicial notice

10   of the orders and opinion as requested by Plaintiffs, as they are

11   matters of public record.

12       B.   Claims for Relief

13            1.   Declaratory Relief Claims

14       The first, second and third claims for relief in the SAC seek

15   declaratory relief that Plaintiffs satisfy the requirements of 18

16   U.S.C. § 921(a)(33)(B)(ii) to possess a firearm despite being

17   convicted of a misdemeanor crime of domestic violence.  18 U.S.C. §

18   922(g)(9), also known as the Lautenberg Amendment, makes it

19   unlawful for any person who has been convicted in any court of a

20   misdemeanor crime of domestic violence to ship or transport in

21   interstate or foreign commerce, or possess in or affecting

22   commerce, any firearm or ammunition; or to receive any firearm or

23   ammunition which has been shipped or transported in interstate or

24   foreign commerce.  Under 18 U.S.C. § 925A, any person who was not

25   prohibited from receipt of a firearm pursuant to section 922(g) may

26   bring an action against the State or political subdivision

27   responsible for providing erroneous information, or responsible for

28   denying the transfer, or against the United States, as the case may

be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be.  18 U.S.C. § 925A(2).

18 U.S.C. § 921(a)(33) defines a "misdemeanor crime of domestic violence" as a misdemeanor that has as an element the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse parent, or guardian of the victim.  However, the statute provides that a person shall not be considered to have been convicted of such an offense unless the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case, and if the prosecution for an offense entitled the person to a jury trial, the case was tried by a jury or the person knowingly and intelligently waived the right to a jury trial, by guilty plea or otherwise. 18 U.S.C. § 921(a)(33)(B)(i).

18 U.S.C. § 921(a)(33)(B) further provides that "a person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights, expressly provides that the person may not ship, transport, posses, or receive firearms."  18 U.S.C. § 921(a)(33)(B)(ii).

1    Plaintiffs argue that under federal law they should be

2  considered as having had their civil rights restored, because by

3  operation of law (the passage of ten years as provided for by Penal

4  Code 12021) their right to possess a firearm has been restored by

5  the State of California.  Alternatively they argue that they were

6  not convicted of misdemeanor domestic violence under 18 U.S.C.

7  § 921(a)(33)(b)(i) because they were unable to make a knowing and

8  intelligent waiver of their right to a jury trial at the time of

9  their convictions, since 18 U.S.C. § 922(g)(9) had not yet been

10  enacted.

11    Defendants moved to dismiss the declaratory relief claims,

12  arguing that Plaintiffs were convicted of misdemeanor domestic

13  violence because they knowingly and intelligently waived their

14  rights to a jury trial, and that restoration by operation of

15  California law of Plaintiffs' right to possess a firearm does not

16  qualify as restoration of civil right under 18 U.S.C.

17  § 921(a)(33)(B)(ii).

18    a.  Waiver of Right to Jury Trial

19    As an initial matter, Plaintiffs cited no authority for the

20  proposition that, in a civil proceeding brought under 18 U.S.C.

21  § 925A, the Court would have jurisdiction to determine that an

22  individual's waiver of his or her right to a jury trial that was

23  made in a state criminal proceeding was not knowing and

24  intelligent.  Even assuming the Court has jurisdiction, Plaintiffs'

25  arguments lack merit because when a person enters a guilty or no

26  contest plea, he or she must only be advised of all direct

27  consequences of the conviction.  Bunnell v. Superior Court, 13

28  Cal.3d 592, 605 (1975).  This requirement relates to the primary

1  and direct consequences involved in the criminal case itself and

2  not secondary, indirect or collateral consequences.  People v.

3  Arnold, 33 Cal.4th 294, 309 (2004).  The possible future use of a

4  current conviction is not a direct consequence of the conviction.

5  People v. Gurule, 28 Cal.4th 557, 634 (2002).

6       Plaintiffs contend that Padilla v. Kentucky, 130 S. Ct. 1473

7  (2010), in which the Supreme Court found that counsel had an

8  obligation to advise his client that the offense to which he was

9  pleading guilty was a deportable offense, supports Plaintiffs'

10 argument regarding knowing and intelligent waiver and collateral

11 consequences.  However, Padilla is not analogous, and does not

12 support Plaintiffs' theory.  Accordingly, the Court dismisses the

13 allegations that at the time Plaintiffs plead to their convictions,

14 they were unable to make a knowing and intelligent waiver of their

15 right to a jury trial because they were not apprised of the

16 possibility of losing their right to possess a firearm.  Congress

17 had not yet enacted 18 U.S.C. § 922(g)(9), and the law does not

18 require Plaintiffs to be advised of future unanticipated changes in

19 the law.

20       b.  Restoration of Civil Rights

21       Defendants also argue that Plaintiffs have not had their civil

22 rights restored, and have not otherwise satisfied the requirements

23 of 18 U.S.C. § 921(a)(33)(B)(ii) to regain their right to possess a

24 firearm.  Though Plaintiffs sought relief under California Penal

25 Code § 1203.4 to have their records cleared, the Ninth Circuit has

26 already held that this does not qualify as expungement under 18

27 U.S.C. § 921(a)(33)(B)(ii).  Jennings v. Mukasey, 511 F.3d 894

28 (2007).  Likewise, Defendants contend that the passage of ten years

from the date of the conviction, while restoring the right to possess a firearm under California law, does not restore Plaintiffs' right to possess a firearm under federal law.

Defendants assert that, as has been recognized by numerous courts, the test for whether civil rights have been restored is whether an individual's right to vote, sit on a jury, or hold elected office has been restored.  See United States v. Andaverde, 64 F.3d 1305, 1309 (1995) (stating that in considering whether an individual's civil rights have been restored, the "Ninth Circuit considers whether the felon has been restored the right to vote, to sit on a jury and hold public office"); United States v. Dahms, 938 F.2d 131, 133 (9th Cir. 1991) (stating that an individual "who, having first lost them upon conviction, regains the right to vote, sit on a jury, and hold public office in the state in which he was originally convicted has had his civil rights restore . . .."); United States v. Gomez, 911 F.2d 219, 220 (9th Cir. 1990) (stating that the intent of Congress in using the phrase "civil rights restored" under 18 U.S.C. § 921(a)(20) was to give effect to state reforms with respect to the status of an ex-convict).

Because Plaintiffs do not allege they lost the right to vote, sit on a jury or hold public office, Defendants argue they cannot allege that their rights have been restored within the meaning of the statute.  See Logan v. United States, 552 U.S. 23, 36 (2007) ("the words 'civil rights restored' do not cover a person whose civil rights were never taken away");  United States v. Brailey, 408 F.3d 609, 613 (9th Cir. 2005) ("Because Brailey's misdemeanor conviction did not remove Brailey's core civil rights of voting, serving as a juror, or holding public office, his civil rights have

1    not been restored within the meaning of federal law by Utah's 2000

2    amendment permitting him to possess a firearm"). Restoration of

3    the right to bear arms is insufficient to qualify as 'restoration

4    of rights,' as restoration must be substantial, not de minimus.

5    Andaverde, 64 F.3d at 1309 (analyzing restoration of rights in the

6    context of a felon-in-possession).

7        Plaintiffs contend that following the Supreme Court's

8    decisions in District of Columbia v. Heller, 554 U.S. 570 (2008),

9    and McDonald v. City of Chicago, 130 S. Ct. 3020 (2010), which

10   recognized the right to bear arms as a fundamental individual

11   right, the Court should re-interpret the "restoration of rights"

12   provision as including cases such as Plaintiffs, where the only

13   right that was taken away and then restored was the right to

14   possess a firearm. Plaintiffs argue that the Court should

15   disregard cases decided pre-Heller, such as Brailey. Further,

16   Plaintiffs assert that because few, if any, states take away a

17   misdemeanants right to vote, sit on a jury, or hold elected office,

18   interpreting "civil rights" to include only these three rights, and

19   not firearm rights, makes little sense and can result in a lifetime

20   ban on firearms possession. Plaintiffs allege that they are facing

21   such a lifetime ban, as they have no means under state law to have

22   their convictions expunged, set aside, or pardoned, and their

23   rights to vote, sit on a jury or hold public office were never

24   taken away and restored.

25       In response, Defendants argue that the Court should still

26   follow Brailey; that its timing as a pre-Heller case is

27   inconsequential for several reasons. First, the right to bear arms

28   recognized by Heller is not among the cluster of rights (the right

to vote, sit on a jury, and hold public office) typically recognized by courts when analyzing whether an individual's civil rights have been restored.  See e.g. Andaverde, 64 F.3d at 1309; Logan, 552 U.S. at 36; Dahms, 938 F.2d at 133; Gomez, 911 F.2d at 220.

Second, Defendants note that 18 U.S.C. § 921(a)(33)(B)(ii) refers to civil rights in the plural, thus even if the right to possess a firearm was recognized under state law as having been restored, this would be insufficient to fulfill the restoration of rights contemplated by the statute. See e.g. United States v. Keeney, 241 F.3d 1040, 1044 (8th Cir. 2001) ("Significantly 921(a)(20) and 921(a)(33)(B)(ii) both refer to civil rights in the plural, thus suggesting that Congress intended to include a cluster of rights, as referenced in McGrath, within the meaning of the term "civil rights" as contained in these provisions") (citing McGrath v. United States, 60 F.3d 1005 (2d Cir. 1995); United States v. Meeks, 987 F.2d 575, 578 (9th Cir. 1993) (holding that an individual whose rights to vote and hold office had been restored, but not his right to serve on a jury, had not had his "civil rights restored"); United States v. Valerio, 441 F.3d 837, 843 (9th Cir. 2006) (noting that the individual's right to vote and right posses firearms had been restored, but holding that this is not enough). Even post-Heller, the Seventh Circuit in United States v. Skoien, 614 F.3d 638, 644-45 (7th Cir. 2010) (en banc) discussed "civil rights" under 18 U.S.C. § 921(a)(33)(B)(ii) as consisting of the right to vote, serve on a jury, and hold public office.[4]

---

[4] The Court notes however that the Skoien Court's subsequent statement, that California law provides a means for expungment of misdemeanor domestic violence convictions through California Penal

Plaintiffs countered this argument, both in their opposition papers and again at oral argument, with the theory that the Second Amendment protects multiple rights.  Plaintiffs assert that the right to keep and the right to bear arms are different rights, making up part of a "bundle of rights" protected by the Second Amendment, and restored by the State of California.  Plaintiffs contend that <u>Heller</u> and <u>McDonald</u> both recognized multiple rights as protected by the Second Amendment, but Defendants assert that both decisions refer to a singular right.

Having carefully reviewed the <u>Heller</u> and <u>McDonald</u> opinions, the Court notes that throughout both opinions the majority refers to a singular right to keep and bear arms protected by the Second Amendment.  The <u>Heller</u> majority did note that Justice Stevens in his dissent "believes that the unitary meaning of "keep and bear Arms" is established by the Second Amendment's calling it a "right" (singular) rather than "rights" (plural). . . There is nothing to this.  State constitutions of the founding period routinely grouped multiple (related) guarantees under a singular "right,". . ." <u>Heller</u> at 591.  However, whether this Court views the Second Amendment as securing a singular right, plural rights, or "multiple related guarantees," it still finds that this does not put restoration of an individuals' right to possess a firearm within the purview of "civil rights restored," which courts have repeatedly classified as the right to vote, hold public office and

Code 1203.4a, is a misstatement of California law.  Additionally, the California legislature recently amended 1203.4a foreclosing Plaintiffs' ability to seek relief through that statute.  As discussed at oral argument, neither 1203.4 or 1203.4a are available to Plaintiffs to seek the equivalent of an expungment or set aside of their convictions under 18 U.S.C. § 921(a)(33)(B)(ii).

sit on a jury.

Lastly, Defendants urge the Court to look to congressional intent, reasoning that Congress, when enacting § 922(g)(9) and § 921 and in 1996, did not intend for the right to bear arms to be included as a "civil right" for purposes of restoration under 18 U.S.C. § 921(a)(33)(b)(ii).  Indeed, as Defendants argue, common sense dictates that the Legislature in 1996 could not have intended "civil rights" to include a right that the Supreme Court did not recognize until Heller in 2008.

Plaintiffs were unable to cite to any case supporting their argument that the restoration of an individual's right to possess a firearm constitutes a restoration of "civil rights" under 18 U.S.C. § 921(a)(33)(B)(ii).  To find that Plaintiffs have stated a claim for the declaratory relief that they seek, this Court would be required to interpret 18 U.S.C. § (921)(a)(33)(B)(ii) in a way that no other court has, thus far, interpreted this statute.  Likewise, Plaintiffs were unable to cite to any case law in support of their argument that Brailey and the cases cited above regarding the meaning of "civil rights restored" should no longer be followed because they were decided prior to Heller.  The Court finds that as a matter of law, Plaintiffs have not alleged facts showing that their civil rights have been restored.  Even Enos, whose record clearance was granted by a Superior Court judge, has not shown that he meets the requirements of 18 U.S.C. § 921(a)(33)(B)(ii).

Though Plaintiffs ask the Court to base a new interpretation of the statute on the Supreme Court's holdings in Heller and McDonald, this Court finds greater merit in Defendants argument that it is the role of the legislature, not this Court, to change

14

or re-write the statute at issue in this case.  As was discussed at the hearing, nothing prevents Plaintiffs from petitioning Congress to change the law, as citizens often do when they are unhappy with the way a bill is written.  Defendants argued that Plaintiffs are free to ask their legislator(s) to sponsor a bill before Congress to change the language of 18 U.S.C. § 921(a)(33)(b)(ii), and raise before Congress the same arguments that Plaintiffs raise before this Court.

In light of the extensive case law holding otherwise, and looking to Congress' intent when creating this exception to § 922(g)(9), this Court refuses Plaintiffs' invitation to create a new interpretation of "civil rights restored" under 18 U.S.C. § 921(a)(33)(B)(ii).  The SAC fails to plead facts showing that Plaintiffs' civil rights have been restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii), or that they have otherwise fulfilled the requirements of the statute, and further amendment would be futile.  Accordingly, the motion to dismiss Plaintiffs' claims for declaratory relief is granted, and the claims are dismissed with prejudice.

### 2. Second Amendment Constitutional Claim

Plaintiffs' fourth claim for relief argues that absent declaratory relief from the Court finding that they have satisfied the requirements of 18 U.S.C. § 921(a)(33)(B)(ii), 18 U.S.C. § 922(g)(9) amounts to a lifetime ban on their right to own a firearm, in violation of the Second Amendment.  Defendants contend that the SAC fails to state a claim, because 18 U.S.C. § 922(g)(9) is constitutional, even when, as alleged by Plaintiffs, it results in a lifetime ban on firearm possession.

In <u>United States v. Vongxay</u>, 594 F.3d 1111 (9th Cir. 2010), the Ninth Circuit analyzed the constitutionality of 18 U.S.C. § 922(g)(1), which prohibits persons with felony convictions from possessing firearms.  The Ninth Circuit found that § 922(g)(1) remained constitutional under the Second Amendment, despite the <u>Heller</u> decision, as denying felons the right to bear arms is consistent with the explicit purpose of the Second Amendment to maintain the security of a free State.  <u>Id.</u> at 1117.  The Ninth Circuit noted that the Court in <u>Heller</u> specifically stated that, "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . we identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." <u>Vongxay</u>, 594 F.3d at 1115 (citing <u>Heller</u>, 128 S. Ct. at 2817, n. 26).  After discussing the extensive case law upholding § 922(g)(1), the Ninth Circuit found that § 921(g)(1) does not violate the Second Amendment as it applied to Mr. Vongxay, a convicted felon.  Accordingly, Defendants urge this Court to grant the motion to dismiss, extending the Ninth Circuit's holding in <u>Vongxay</u> to find that that § 922(g)(9) is lawful under <u>Heller</u>, and does not violate the Second Amendment as applied to Plaintiffs' convicted domestic violence misdemeanants.

The Ninth Circuit did not apply any level of scrutiny in reaching their decision on the constitutionality of § 922(g)(1) under the Second Amendment.  It was not until the Court analyzed the accompanying equal protection claim that they applied constitutional scrutiny.  No equal protection claim is alleged in the SAC, and Defendants urge this Court to follow the Ninth Circuit

by deciding the Second Amendment claims without applying constitutional scrutiny.  Though the parties argued at length during oral argument about the appropriate level of scrutiny to apply to a Second Amendment challenge, the appropriate level of scrutiny has not been designated by the Supreme Court or the Ninth Circuit, and this Court need not reach that question in order to decide this motion.

Numerous courts have found 18 U.S.C. § 922(g)(9) to be presumptively lawful under District of Columbia v. Heller, 554 U.S. 570 (2008).  See e.g. United States v. White, 593 F.3d 1199, 1206 (11th Cir. 2010) ("we now explicitly hold that 922(g)(9) is a presumptively lawful longstanding prohibition on the possession of firearms"); United States v. Booker, 644 F. 3d 12, 24 (1st Cir. 2011) ("indeed, 922(g)(9) fits comfortably among the categories of regulations that Heller suggested would be presumptively lawful"); In re United States, 578 F.3d 1195 (10th Cir. 2009) ("nothing suggests that the Heller dictum, which we must follow, is not inclusive of § 922(g)(9) involving those convicted of misdemeanor domestic violence"); United States v. Smith, 742 F.Supp.2d 855, 863 (S.D. W. Va. 2010) ("therefore, 922(g)(9) should be considered presumptively lawful, and it is the opinion of this Court that the statute may be upheld on that basis alone").

Defendants argue that the Ninth Circuit has already held that felons are not protected by the Second Amendment in Vongxay, and the Court should extend similar reasoning to domestic violence misdemeanants.  All felons, whether violent or not, are disqualified from protection under the Second Amendment.  Vongxay, 594 F.3d at 1116.  However, § 922(g)(9) does not apply to all

1  misdemeanants; it singles out only those who have committed violent

2  acts against their intimate partners, children or other family

3  members. See United States v. Hayes, 129 S. Ct. 1079, 1087 (2009)

4  (noting that Congress enacted § 922(g)(9) out of concern that

5  existing felon-in-possession laws were not keeping firearms out of

6  the hands of domestic abusers, because many people who engage in

7  serious spousal or child abuse ultimately are not charged with or

8  convicted of felonies).

9       Plaintiffs have argued that unless the Court agrees to re-

10  interpret § 921(a)(33)(B)(ii) and grant Plaintiffs' the declaratory

11  relief that they seek, then § 921(a)(33)(B)(ii) along with

12  § 922(g)(9) results in an unconstitutional lifetime ban on

13  Plaintiffs' ability to possess firearms.  Plaintiffs did not cite

14  to any cases which have found § 922(g)(9) to be constitutionally

15  suspect, but argue that without a means to restore their rights or

16  have their convictions set aside or otherwise pardoned or expunged,

17  § 922(g)(9) cannot pass constitutional muster.

18       Defendants note that courts have said that for the same

19  reasons the Supreme Court articulated for stating that the long

20  standing prohibitions referred to in Heller remain presumptively

21  lawful (i.e., the prohibitions pertaining to felons and the

22  mentally ill), there is an even stronger reason for finding that

23  persons convicted of misdemeanor crimes of domestic violence should

24  not be protected by the Second Amendment.  See e.g. Smith, 742

25  F.Supp.2d at 863 (stating that the definitional net of § 922(g)(9)

26  is more narrowly crafted than that of § 922(g)(1), another

27  compelling reason to uphold § 922(g)(9) by analogy to § 922(g)(1));

28  White, 593 F.3d at 1206 (noting that in contrast to a felon, who

18

1    could be convicted of a violent or non-violent act, a person

2    convicted under § 922(g)(9) must have first acted violently toward

3    a family member or domestic partner).

4         Thus, even if § 922(g)(9) imposes a lifetime ban on a domestic

5    violence misdemeanant's ability to possess a firearm, Defendants

6    argue that such a result is constitutional due to the nature of the

7    specific crime committed.  Defendants cite Skoien, 614 F.3d at

8    645 and Smith, 742 F.Supp.2d at 869 in support of the argument that

9    § 922(g)(9) is not necessarily a lifetime ban as

10   § 921(a)(33)(b)(ii) provides relief to some individuals, but even

11   if it is, it remains constitutional.  The court in Skoien

12   acknowledged that the statute tolerates different outcomes for

13   persons convicted in different states, but noted that this is true

14   of all situations in which a firearms disability or other adverse

15   consequence depends on state law and this variability does not call

16   into question federal firearms limits based on state convictions

17   that have been left in place under the states' widely disparate

18   approaches to restoring civil rights.  The court in Smith reasoned

19   that:

20        It is clear from the federal law that the majority of
          domestic violence offenders will not regain their
21        firearms possession right.  However, there are
          procedures for the restoration of the right . . . It
22        is up to state legislatures to constrict or expand the
          ease with which convicted misdemeanants may apply for
23        a receive relief under these measures.

24        The Court finds Defendants' arguments, and the case law, to be

25   persuasive that § 922(g)(9) is a presumptively lawful categorical

26   ban on firearm possession.  Keeping guns out of the hands of those

27   convicted of domestic violence fits squarely into the prohibitions

28   noted by Heller.  Plaintiffs, as convicted domestic violence

1   misdemeanants, fall within that categorical ban, thus the Second

2   Amendment does not apply to them.  Indeed, Plaintiffs themselves do

3   not argue against the extensive case law that has found § 922(g)(9)

4   to be presumptively lawful.

5       Upon determining that the statute is presumptively lawful, a

6   court may end its inquiry there.  See e.g. White, 593 F.3d at 1206

7   (holding 922(g)(9) to be presumptively lawful and ending its

8   inquiry there); Smith, 742 F. Supp. at 859 (discussing how some

9   courts have found 922(g)(9) to be presumptively constitutional and

10  end their analysis there, while other courts conduct an individual

11  analysis of the statutory section at issue, determine the

12  appropriate level of constitutional scrutiny to apply, and then

13  scrutinize the statute in light of the facts before the court).

14  Thus because this Court finds that § 922(g)(9) warrants inclusion

15  on Heller's list of presumptively lawful longstanding prohibitions

16  on the right to bear arms, no further constitutional scrutiny is

17  required.

18      The SAC also attempts to plead an as-applied challenge.  To

19  raise a successful as-applied challenge, a plaintiff must present

20  facts about himself and his background that distinguish his

21  circumstances from those of persons historically barred from Second

22  Amendment protections.  United States v. Barton, 633 F.3d 168, 174

23  (3rd Cir. 2011).  The SAC describes Plaintiffs' convictions as

24  "minor," yet domestic violence misdemeanants are, by statutory

25  definition, violent criminals.  Smith, 742 F.Supp.2d at 869.

26  Defendants argue that Plaintiffs have not alleged facts about

27  themselves and their backgrounds that distinguish their

28  circumstances from other domestic violence misdemeanants who are

1  disqualified from firearm possession under § 922(g)(9).

2       The Court notes that at oral argument, for the first time,
3  Defendants raised the issue that Plaintiffs' Second Amendment "as-
4  applied" challenge could actually be characterized as a facial
5  overbreadth challenge, because § 922(g)(9) has not been "applied"
6  to Plaintiffs.  Defendants argue that it has not been applied
7  because Plaintiffs have not been arrested and charged with
8  possession of a firearm in violation of § 922(g)(9), which is the
9  route by which challenges to § 922(g)(9) typically reach courts.
10 Defendants stated that Plaintiffs would have standing to bring an
11 overbreadth challenge, but did not explicitly argue that Plaintiffs
12 lack standing to bring an "as-applied" challenge.  Plaintiffs for
13 their part did not dispute the characterization of their challenge
14 as being one of overbreadth, though the SAC pleads that the statute
15 is unconstitutional as applied to them, not that Congress
16 overreached by creating a perpetual disqualification for persons
17 convicted of misdemeanor domestic violence.

18      Such an overbreadth argument was advanced by the defendant in
19 Skoien, 614 F.3d at 644-45.  The Seventh Circuit ultimately
20 declined to reach this argument because it found that the statute
21 was properly applied to the defendant, and thus he was not able to
22 obtain relief based on arguments that a differently situated person
23 might present.  Id. at 945.  Likewise, the defendant in Smith,742
24 F.Supp.2d at 868-69, argued that the difficulty of securing a
25 pardon or expungement under either state or federal law,
26 § 922(g)(9) operates as a complete ban on firearm ownership in
27 perpetuity.  The Smith court held that even assuming the defendant
28 was permanently banned from future firearm possession, § 922(g)(9)

21

1  was reasonably tailored to accomplish a compelling government

2  interest.

3       Here, the parties did not engage in extensive argument over

4  whether the SAC presents an overbreadth or as-applied challenge,

5  and Defendants did not brief the issue in their motion to dismiss

6  or reply briefs.  However, in the Court's view the characterization

7  of the precise nature of Plaintiffs' Second Amendment challenge

8  does not change the outcome.  Whether this Court views the SAC as

9  bringing an as-applied challenge or an overbreadth challenge, the

10 Court does not find that Plaintiffs have stated a claim for

11 violation of the Second Amendment.  The Court finds that

12 § 922(g)(9) is a presumptively lawful categorical ban under <u>Heller</u>,

13 and extends the Ninth Circuit's ruling in <u>Vongxay</u> to hold that

14 § 922(g)(9) does not violate the Second Amendment as applied to

15 Plaintiffs, convicted domestic violence misdemeanants.  Plaintiffs

16 have not set forth facts to rebut that presumption of lawfulness,

17 distinguishing them from other domestic violence misdemeanants

18 sufficiently to state an as-applied or overbreadth challenge.

19 Accordingly, Plaintiffs' have not stated a claim for violation of

20 the Second Amendment.  Plaintiffs have already amended the

21 complaint twice and further amendment would be futile. Accordingly

22 the dismissal is with prejudice.

23                          III.ORDER

24      The Motion to Dismiss is GRANTED, and Plaintiffs' SAC is

25 DISMISSED, WITH PREJUDICE. The March 21, 2012 hearing on Plaintiffs

26 motion for summary judgment is vacated.

27      IT IS SO ORDERED.

28 Dated: February 28, 2012

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE